IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **TERRY D. HAMILTON, et al.,** | ) | **CV F 02 6583 AWI SMS** |
| | ) | |
| **Plaintiffs,** | ) | **MEMORANDUM OPINION AND** |
| **v.** | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT ON THE SEVENTH** |
| **HENRY W. WILLMS, et al.,** | ) | **CLAIM FOR RELIEF** |
| | ) | |
| **Defendants.** | ) | (Document #259) |
| _____ | ) | |

This action proceeds on Plaintiffs' second amended complaint. The court has jurisdiction over the RICO claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

## PROCEDURAL HISTORY

This action was filed on July 17, 2002, in the United States District Court for the District of Colorado. The first amended complaint contained nine claims for relief. Pursuant to Defendants' motion, on December 11, 2002, the Colorado District Court transferred the action to this court. On December 20, 2002, upon Plaintiffs' request, the Clerk of the Court entered default against Defendants. On March 17, 2003, the Magistrate Judge set aside default.

On March 24, 2003, Defendants filed a motion to dismiss the first amended complaint. On April 21, 2003, Plaintiffs filed an opposition to Defendants' motion along with a motion for leave to file an amended complaint. On May 7, 2003, the court granted Defendants' motion to dismiss and dismissed the complaint with leave to amend.

On June 11, 2003, Plaintiffs filed a second amended complaint.  The first claim alleges a RICO violation pursuant to 18 U.S.C. §§ 1962(c) & 1962(d).   The second claim alleges forbearance on foreclosure agreements concerning California properties.  The third claim alleges breach of contract concerning foreclosures on California properties.  The fourth claim alleges fraud in relation to a note taken on Colorado Property and is brought under Colorado law.   The fifth claim alleges theft of Colorado Property in violation of Colorado law.  The sixth claim alleges fraud in relation to California property and is brought under California law.  The seventh claim alleges theft regarding SEMCO's personal property in violation of California law.

On July 1, 2003, Defendants filed a motion to strike the second amended complaint because the second amended complaint contained additions that were precluded by the court's May 7, 2003 order.   On September 4, 2003, the court denied Defendants' motion to strike and found the additions fell within the court's previous order dismissing the first amended complaint with leave to amend.

On December 1, 2003, Defendant Edward Charles Stoermer ("Defendant Stoermer") filed a motion to dismiss.  On December 10, 2003, Defendant Redwood Trust Deed Services, Inc. ("Defendant Redwood") field a motion to dismiss.  On January 7, 2004, Plaintiffs filed oppositions.   On January 21, 2004, the court dismissed Defendant Stoermer from this action and dismissed Defendant Redwood from all claims except for the first claim.

On December 23, 2004, Defendant Susan Willms Thurston ("Defendant Thurston") filed a motion for summary judgment alleging that the amended complaint fails to allege any wrongdoing on her part.  On January 24, 2005, Plaintiffs filed an opposition.   Plaintiffs requested the court deny Defendant Thurston's motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure because the discovery process is not yet complete.  On March 7, 2005, the court held a hearing.   On April 8, 2005, Plaintiffs filed a declaration by Plaintiffs' attorney, stating that subpoenas for the depositions of numerous individuals have been served.   On April 24, 2005, the court denied Defendant Thurston's motion for summary judgment without

prejudice.

On December 30, 2004, Defendants filed a motion to dismiss the Seventh Claim for conversion brought by Plaintiff James C. Bateman Petroleum Services, dba Semco, ("SEMCO"). Defendants contended that the court should decline to exercise supplemental jurisdiction because SEMCO's claim does not derive from the same common nucleus of operative facts as the other Plaintiffs' RICO and state law claims.  On January 24, 2005, Plaintiffs filed an opposition.   On March 7, 2005, the court held a hearing on Defendants' motions.  On April 14, 2005, the court denied Defendants' motion to dismiss Plaintiff SEMCO.

On January 31, 2005, Defendants filed a motion for partial summary judgment on the Fourth Claim in the Second Amended Complaint – Fraud re: Eagle Ridge Note.   Defendants contended that because Plaintiffs assigned the Note at issue to Cheyenne Development, Plaintiffs could not show standing to assert this claim or show that they have been damaged.  Defendants also contended that the undisputed facts showed no reliance by Plaintiffs.    On March 21, 2005, Plaintiffs filed a late response to Defendants' motion for summary judgment.   Plaintiffs requested that the court deny the motion for summary judgment pursuant to Rule 56(f).  Plaintiffs also contended that they have been damaged because they lost the right to develop the properties as promised by Defendants, lost $161,800 when the Note was marked paid in full, and they are subject to litigation by Cheyenne Development Company.   On March 28, 2005, Defendants filed a  reply.   On April 14, 2005, the court granted Defendants' motion for summary judgment on the Fourth Claim.   The court found that the undisputed facts showed Plaintiffs did not rely on any statements made by Willms concerning the Note because the undisputed facts show that there was no final agreement between Willms and Hamilton upon which either Willms or Hamilton acted.

On May 25, 2005, Defendants filed a motion for partial summary judgment on the Seventh Claim for relief.   Defendants contend that Plaintiffs cannot show a prima facie case for conversation.   Defendants argue that because SEMCO sold its personal property to James

Bateman, SEMCO did not have an interest in the personal property that was allegedly converted. Further, Defendants contend that SEMCO cannot show damages because at the time of the alleged conversion, SEMCO had already ceased operations, had no assets, and was insolvent.

After reviewing Plaintiffs' request for additional time to oppose Defendants' motion, the court granted Plaintiffs' motion to move the hearing date.

On June 17, 2005, Plaintiffs filed an opposition.   Plaintiffs contend that the sale of SEMCO's equipment and inventory was never consummated.   Plaintiffs argue that because Henry Willms refused to allow Terry D. Hamilton and James Bateman to enter the property where the equipment and inventory was stored, Mr. Bateman cancelled the sale.   Plaintiffs contend that while the sale was attempted, it was never completed because the equipment and inventory were never delivered and no monetary credit was ever given.

On June 27, 2005, Defendants filed a reply.

## UNDISPUTED FACTS

Plaintiff James C. Bateman Petroleum dba SEMCO is a California Corporation ("SEMCO").

Terry Hamilton is the President and Chief Executive Officer of SEMCO.

SEMCO alleges that it was a tenant in possession of a 2.87 acre portion of the real property located at 1201 S.7th Street, Modesto, California.

SEMCO alleges that one or more defendants "caused damage and ultimate destruction to the personal property and of the business" of SEMCO.

Defendants offer as an undisputed fact that prior to April 30, 2002, SEMCO sold its personal property, including inventory, equipment and materials, to James C. Bateman. Defendants offer as an undisputed fact that as of April 27, 2002, SEMCO did not own any inventory, equipment, machinery, fixtures and/or supplies used in business, or any office equipment, furnishings and/or supplies.  Plaintiffs dispute these facts.  Plaintiffs contend that while a contract had been entered into between SEMCO and James Bateman to purchase

SEMCO's personal property, the transaction was never completed and ownership of SEMCO's personal property did not transfer because Henry Willms denied access to the property and disposed of the property.

As of April 27, 2002, SEMCO had no assets and liabilities of $2,846,921.00.  Plaintiffs do not dispute this fact.  However, SEMCO disputed approximately $1,008,000.00 of the liabilities listed at $2,846,921.00.

As of 2002, SEMCO was insolvent.

Defendants offer as an undisputed fact that the equipment and inventory sold to James Bateman by SEMCO was present on the real property located at 1201 S. 7th Street, Modesto, in August 2002.   Plaintiffs dispute this fact.   While the property was located at 1201 S. 7th Street, Modesto in August 2002, Plaintiffs argue the "sale" was never consummated due to Mr. Willms not allowing Mr. Hamilton nor Mr. Bateman the opportunity to remove the equipment and inventory from the property.

SEMCO ceased business operations September 30, 2001.

The damages to the personal property and business of SEMCO alleged in the Seventh Claim for Relief occurred after July 2002.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party
> [A]lways bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material

fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).    In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.

**DISCUSSION**

In the Seventh Claim, Plaintiffs contend that the Willms Enterprises unlawfully physically interfered with SEMCO's tenancy and use of personal property.  The amended complaint alleges the Willms Enterprise caused damage and the ultimate destruction to the personal property and business of SEMCO.   The complaint alleges that the value of the personal property lost is in excess of $100,000.   While the amended complaint refers to this claim as one for theft, in the briefs, the parties agree that the Seventh Claim is one for conversion.

"Conversion is the wrongful exercise of dominion over the property of another." <u>Irving Nelkin & Co. v. South Beverly Hills Wilshire Jewelry & Loan</u>, 129 Cal.App.4th 692, 699 (2005).  The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of property rights, and damages.  <u>Spates v. Dameron Hosp. Assn.</u>, 114 Cal.App.4th 208, 221 (2003); <u>Oakdale Village Group v. Fong</u>, 43 Cal.App.4th 539, 543-44 (1996); <u>Hartford Financial Corp. v. Burns</u>, 96 Cal.App.3d 591, 598 (1979).   "Conversion is a species of strict liability in which questions of good faith, lack of knowledge and motive are ordinarily immaterial." <u>Irving Nelkin & Co.</u>, 129 Cal.App.4th at 699; <u>City of Los Angeles v. Superior Court</u>, 85 Cal.App.3d 143, 149 (1978).

Defendants contend that SEMCO did not own the property at issue in the Seventh Claim.  The plaintiff's right to ownership or possession of the property at the time of conversion is an element to be proven in a conversion case.   <u>Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson</u>, 96 Cal.App.4th 884, 892 n.2 (2002).  In support of their allegation that SEMCO did not own the equipment and inventory at issue,  Defendants cite to SEMCO's April 2002 bankruptcy.   At the date of the bankruptcy filing, SEMCO had no assets and liabilities of $2,846,921.00.   At that time, SEMCO did not own or have any other interest in personal property in the form of equipment, inventory or other materials.  SEMCO was insolvent. Because the alleged destruction of SEMCO's property did not occur until July 2002, Defendants

1 contend SEMCO cannot show it had an interest in the personal property at issue in the Seventh

2 Claim.   In addition, Defendants contend that SEMCO can seek neither damages for property it

3 did not own nor damages for loss to a business that had already stopped operation.

4     Plaintiffs contend that the sale of the equipment and inventory to James Bateman was

5 never consummated.   Plaintiffs allege that Bateman cancelled the sale and no monetary credit

6 was given to Hamilton for SEMCO or for the equipment or inventory.   Plaintiffs also contend

7 that the Bankruptcy petition is not relevant.   Plaintiffs contend that on July 25, 2005, the

8 SEMCO Bankruptcy was dismissed.   The alleged incident occurred in August 2002, after July

9 25, 2002.

10     The court finds inconsistent evidence on whether SEMCO owned the property at issue in

11 the Seventh Claim.   On August 9, 2002, Mr. Hamilton signed a declaration stating that SEMCO

12 had $150,000 to $300,000 worth of equipment and inventory and the equipment had been sold to

13 James C. Bateman. See Pool Dec., Exhibit B (Hamilton's Deposition Exhibit 5).   Mr. Hamilton

14 testified at his deposition that prior to April 30, 2002, he had sold all of the personal property,

15 equipment, inventory, materials, and everything belonging to SEMCO to James Bateman. See

16 Hamilton Depo. at 44.   On May 20, 2002, Mr. Hamilton signed under penalty of perjury the

17 bankruptcy schedules for SEMCO. See Exhibit B Request for Judicial Notice.   Schedule B

18 stated that SEMCO had no "Machinery, fixture, equipment and supplies used in the business."

19 See id.   The bankruptcy schedule did not list the sale of the property to Mr. Bateman in the

20 schedules.   On August 7, 2002, Mr. Bateman signed a declaration that stated all of the

21 equipment and inventory on the property, except the storage drums, "have been purchased by

22 me." See Pool Supp. Dec., Exhibit A (Bateman 2002 Declaration).

23     Plaintiffs contend that despite the evidence showing SEMCO did not own the property,

24 SEMCO in fact owned the property because the sale referenced by Defendants was rescinded or

25 never consummated.   In his June 17, 2005 declaration, Mr. Bateman states that the purchase

26 price of the equipment and inventory was to be subtracted from the approximately $300,000 that

27

28                               8

Mr. Hamilton owed Mr. Bateman.  <u>See</u> Bateman 2005 Dec.   Mr. Bateman declares that the sale

was never consummated because Mr. Willms prevented Mr. Hamilton and Mr. Bateman from

entering the property to obtain the equipment.   <u>See id</u>.   Mr. Bateman states that because Mr.

Hamilton could not deliver the equipment or inventory, Mr. Bateman cancelled the sale and no

monetary credit was given to Mr. Hamilton or SEMCO for the equipment and inventory.   <u>See id</u>.

At his deposition, Mr. Hamilton also testified that when he was unable to deliver the equipment

and inventory, the deal with Mr. Bateman was rescinded.   Mr. Hamilton explained his prior

declaration about the sale as follows:

> Q.  How is it that you're claiming lost property in an amount in excess of $100,000 in
> August of 2002 when in April of 2002 Semco didn't have any preoprty?
> A.  The property described here was previously sold to Bateman.  And when I was unable
> to deliver, then the deal was rescinded as to the property that was left, the equipment on the
> property.  In the meantime, I believe this bankruptcy petition was dismissed.
> Q.  So prior to April 30, 2002, you had sold all of the personal property, equipment,
> inventory, materials, everything to James Bateman, correct?
> A.  Yes.

<u>See</u> Hamilton Depo. at 44.   Thus, Plaintiffs argue that at the time of the conversion, SEMCO

still owned the property.

Defendants contend that Plaintiffs are judicially estopped from taking a position in this

action that the equipment and inventory at issue belonged to SEMCO because in the bankruptcy

action SEMCO took the position that the property had been sold to Bateman.  SEMCO failed to

list that it had the personal property as an asset in the Bankruptcy petition.   The Bankruptcy

petitions and worksheets were signed under penalty of perjury.   Defendants appear to argue that

SEMCO is prohibited from taking a position in this action – that SEMCO still owned the

equipment and inventory – that is contrary to the position it took in the bankruptcy action.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions,

precludes a party from gaining an advantage by taking one position, and then seeking a second

advantage by taking an incompatible position."   <u>Wagner v. Professional Engineers in California</u>

<u>Government</u>, 354 F.3d 1036, 1044 (9th Cir. 2004).  "[J]udicial estoppel applies to a party's stated

9

1   position, regardless of whether it is an expression of intention, a statement of fact, or a legal

2   assertion."   Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir.1997).   The purpose of judicial

3   estoppel is to prevent the use of inconsistent assertions that would result in an affront to judicial

4   dignity and a means of obtaining unfair advantage.   Rockwell International v. Hanford Atomic

5   Metal Trades, 851 F.2d 1208, 1210 (9th Cir.1988).   Judicial estoppel applies only if the court has

6   relied on the party's previously inconsistent statement.   Interstate Fire v. Underwriters at Lloyd's,

7   London, 139 F.3d 1234, 1239 (9th Cir.1998).   A review of the documents concerning SEMCO's

8   bankruptcy shows that the bankruptcy petition was dismissed.   There is no indication that in

9   dismissing the petition, the fact SEMCO failed to list the equipment and inventory at issue as an

10  asset was considered by the Bankruptcy court.   Thus, the doctrine of judicial estoppel does not

11  prohibit SEMCO from now contending that the sale between SEMCO and Bateman was undone

12  and SEMCO owned the property.

13          Defendants next contend that the current testimony, indicating that the sale of the

14  equipment and inventory to Bateman was somehow "undone," is sham testimony.   The general

15  rule is that a party cannot create an issue of fact by contradicting his prior testimony.   Kennedy

16  v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991) see also Cleveland v. Policy

17  Management Systems Corp., 526 U.S. 795, 807 (1999).   This rule, however, must be applied

18  with caution. Kennedy, 952 F.2d at 266. To apply this general rule, "the district court must make

19  a factual determination that the contradiction was actually a 'sham.'" Id. at 267.   Testimony is a

20  sham only if it flatly contradicts earlier testimony in an attempt to create an issue of fact to avoid

21  summary judgment. Kennedy, 952 F.2d at 267.   Contradictory testimony is not a sham where it

22  is "the result of an honest discrepancy, a mistake, or the result of newly discovered evidence."

23  Id.   Thus, testimony is not a sham if it merely elaborates upon, explains or clarifies prior

24  testimony.   Messick v. Horizon Indust., Inc., 62 F.3d 1227, 1231 (9th Cir.1995).   Contradictory

25  testimony from a witness is not a sham where the witness was confused at the time of the earlier

26  testimony and provides an explanation for the confusion.   Kennedy, 952 F.2d at 266; Miller v.

27

28                                                  10

1   <u>A.H. Robins Co.</u>, 766 F.2d 1102, 1104 (7th Cir.1985).   Finally, contradictory testimony that

2   results from newly discovered evidence is also not a sham.  <u>Kennedy</u>, 952 F.2d at 267.

3       Certainly, every discrepancy contained in an affidavit does not justify a district
        court's refusal to give credence to such evidence. . . . In light of the jury's role in
4       resolving questions of credibility, a district court should not reject the content of
        an affidavit even if it is at odds with statements made in an earlier deposition.

5

6   <u>Kennedy</u>, 952 F.2d at 266.

7       Neither Mr. Hamilton nor Mr. Bateman have explained why they did not disclose earlier

8   that the sale of the equipment and inventory was undone or revoked.   On August 9, 2002, Mr.

9   Hamilton signed a declaration stating that SEMCO's equipment and inventory had been sold to

10  Mr. Bateman.   On August 7, 2002, Mr Bateman signed a declaration that stated all of the

11  equipment and inventory on the property, except the storage drums, "have been purchased by

12  me."   In their current depositions and declarations, Mr. Hamilton and Mr. Bateman explain that

13  while the property had been sold to Mr. Bateman, the sale was undone when Mr. Willms would

14  not let them have access to the property.   It is not entirely clear when Mr. Hamilton and Mr.

15  Bateman were not given access to the property.   In their current declarations and depositions,

16  Mr. Hamilton and Mr. Bateman do not state when the sale was revoked or undone.   Was the sale

17  revoked or undone as of August 7, 2002 and August 9, 2002?  Or, was the sale not revoked until

18  legal proceedings to gain access to the property failed?  Mr. Hamilton and Mr. Bateman have

19  failed to provide sufficient details about when they revoked or undid the sale for the court to

20  conclude whether their current declarations and depositions are a sham.

21      Mr. Hamilton has also not explained why on May 20, 2002, Mr. Hamilton signed the

22  bankruptcy schedules stating the SEMCO had no equipment and inventory.   In the same

23  bankruptcy schedules, Mr. Hamilton did not list the sale of equipment and inventory to Mr.

24  Bateman, implying the sale must have occurred at least one year prior to May 20, 2002.   The

25  bankruptcy schedules imply that Mr. Bateman owned the property after at least May 20, 2002.

26  Mr. Hamilton and Mr. Bateman have provided no explanation for the bankruptcy filings except

27

28                                              11

1    to state that the bankruptcy was eventually dismissed.

2           Regardless of whether the court finds the testimony regarding a rescission of the sale a

3    sham, at the time of the alleged conversion, Mr. Bateman owned the equipment.   The undisputed

4    facts reveal that Mr. Bateman had purchased the equipment and inventory.   Mr. Hamilton

5    admitted that some of the equipment and inventory had been removed and given to Mr. Bateman.

6    See Hamilton Depo at 24.   Both Mr. Hamilton and Mr. Bateman stated in their 2002 declarations

7    that at the time Mr. Willms refused them access to the land, the equipment and inventory

8    belonged to Mr. Bateman.   Mr. Hamilton stated in his deposition that after "this" occurred, he

9    had to rescind or unwind the sale to Mr. Bateman because they no longer had access to the

10   property. See Hamilton Depo. At 23.   Mr. Bateman's declaration is similar:

11          As a result of Mr. Willms actions, Terry D. Hamilton, on behalf of
            SEMCO, was not able to deliver the equipment or the inventory to me as we had
12          agreed.   There, I cancelled the sale and no monetary credit was given to Terry D.
            Hamilton, or SEMCO, for any equipment or inventory.

13

14   See Bateman June 17 Dec.

15          Mr. Hamilton's testimony states that SEMCO regained ownership of the equipment and

16   inventory after Mr. Hamilton and Mr. Bateman could not access it.   Similarly, Mr. Bateman

17   states that he cancelled the sale when Mr. Hamilton was unable to deliver the equipment and

18   inventory.   If SEMCO regained ownership of the equipment and inventory after Mr. Willms

19   denied access to it, someone other than SEMCO must have had ownership of it when Mr. Willms

20   denied access to the equipment and inventory.   For Mr. Bateman to have cancelled or undone the

21   sale after Mr. Willms denied access to the equipment and inventory, the sale must have taken

22   place prior to Mr. Willms' actions.   The fact that SEMCO did not own the property until after

23   Mr. Willms refused Mr. Hamilton and Mr. Bateman access to the property is reinforced by the

24   bankruptcy schedules in which the equipment and inventory is not listed as an asset belonging to

25   SEMCO.

26          A conversion is an act of dominion wrongfully exerted over another's personal property,

27

28                                                  12

1  contrary to that person's rights in the property.  <u>Messerall v. Fulwider</u>, 199 Cal.App.3d 1324,

2  1329 (1988).   Conversion requires the plaintiff's ownership or right to possession of the property

3  at the time of the conversion and the defendant's conversion by a wrongful act or disposition of

4  property.  <u>See</u> <u>Spates</u>, 114 Cal.App.4th at 221.   A conversion occurs at the time of the alleged

5  wrongful act.  A conversion requires ownership of the property at the time of the conversion.  In

6  this case, the wrongful act alleged in the complaint is when Mr. Willms would not allow Mr.

7  Bateman and Mr. Hamilton to have access to the equipment and inventory and when Mr. Willms

8  ultimately destroyed the property.   At that time, the undisputed facts reveal that Mr. Bateman

9  owned the equipment and inventory.   The fact that Mr. Bateman may have returned ownership

10  of the equipment and inventory to SEMCO and/or that Mr. Bateman and Mr. Hamilton rescinded

11  the sale when the inventory and property could not be accessed does not change who owned the

12  property at the time of the conversion.   Thus, based on the undisputed facts before the court, Mr.

13  Bateman and not SEMCO owned the equipment and property at the time of the alleged

14  conversion.

15       Mr. Bateman is not a named plaintiff in this action.  SEMCO is the named plaintiff to the

16  Seventh Claim.   Based on the undisputed facts, the named plaintiff, SEMCO, does not have a

17  claim for conversion, and summary judgment is appropriate.

18                                          **ORDER**

19       Accordingly, based on the above memorandum opinion, Defendants' motion for partial

20  summary judgment on the Seventh Claim for relief is GRANTED.

21  IT IS SO ORDERED.

22  **Dated:    July 6, 2005**                    _____/s/ Anthony W. Ishii_____
    9h0d30                                        UNITED STATES DISTRICT JUDGE
23

24

25

26

27

28                                          13