IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERRY D. HAMILTON, et al., | ) | CV F 02-6583 AWI SMS |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER GRANTING MOTION FOR |
| | ) | SUMMARY JUDGMENT IN PART |
| v. | ) | AND DENYING MOTION FOR |
| | ) | SUMMARY JUDGMENT IN PART |
| | ) | |
| | ) | ORDER STRIKING REQUEST TO |
| HENRY W. WILLMS, et al., | ) | SET ASIDE FORECLOSURE SALES |
| | ) | AND RESTORE TITLE FROM THE |
| | ) | THIRD AND FIFTH CLAIMS FOR |
| Defendants. | ) | RELIEF |
| | ) | |
| _____ | ) | (Documents #316, #333, & #348) |

This action proceeds on Plaintiffs' second amended complaint.  The court has jurisdiction over the RICO claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.   Pending before the court is Defendants' motion for summary judgment on the second, third, fifth, and sixth claims for relief.

## PROCEDURAL HISTORY

This action was filed on July 17, 2002, in the United States District Court for the District of Colorado.  The first amended complaint contained nine claims for relief.  Pursuant to Defendants' motion, on December 11, 2002, the Colorado District Court transferred the action to this court.

On June 11, 2003, Plaintiffs filed a second amended complaint.  The first claim alleges a RICO violation pursuant to 18 U.S.C. §§ 1962(c) & 1962(d).   The second claim alleges

1    forbearance on foreclosure agreements concerning California properties.  The third claim alleges

2    breach of contract concerning foreclosures on California properties.  The fourth claim alleges

3    fraud in relation to a note taken on Colorado Property and is brought under Colorado law.   The

4    fifth claim alleges theft of Colorado Property in violation of Colorado law.  The sixth claim

5    alleges fraud in relation to California property and is brought under California law.  The seventh

6    claim alleges theft regarding JCB's personal property in violation of California law.

7        On September 21, 2005, Defendants filed a motion for partial summary judgment on the

8    second, third, fifth, and sixth claims for relief.   Defendants contend that they are entitled to

9    summary judgment on the second claim because Plaintiffs cannot show Henry Willms ever

10   intended to honor his alleged promise to forbear and Plaintiffs cannot show justifiable reliance.

11   Defendants contend that they are entitled to summary judgment on the third claim because the

12   undisputed facts show Terry Hamilton failed to perform under the alleged oral agreement.

13   Defendants contend that they are entitled to summary judgment on the fifth claim because

14   Plaintiffs cannot submit admissible evidence to make a claim for theft.   Defendants contend that

15   they are entitled to summary judgment on the sixth claim because there is no evidence Henry

16   Willms ever intended to honor his promise, Plaintiffs did not tender the amount due, and

17   Plaintiffs cannot show damages.

18       On November 7, 2005, Plaintiffs filed a response to Defendants' motion for summary

19   judgment.   Plaintiffs contend that there are material disputed issues of fact underlying the second

20   claim because there are facts showing Hamilton had the money to pay Defendants.   Plaintiffs

21   contend that there are also material disputed issue of fact regarding the breach of contract claim.

22   Plaintiffs contend that there are material disputed issues of fact on whether Willms fraudulently

23   concealed or misrepresented the status of a $150,000 note.   Plaintiffs contend that there are

24   significant factual questions existing as to the fraud claim on the Hart Road Property.

25       On November 14, 2005, Defendants filed an objection and motion to strike Plaintiffs'

26   untimely opposition.  Defendants contend that any opposition needed to be served on November

27

28                                          2

4, 2005, seventeen days before the hearing, but Plaintiffs did not serve their opposition until November 7, 2005, after 4:30 p.m., only fourteen days before the hearing.

## FACTS[1]

**A. Undisputed Facts**

Henry Willms and Dolly Willms are co-trustees of the Trust Agreement dated September 26, 1986.[2]

On or about May 24, 2001, Defendants caused to be published a Notice of Trustee's Sale for the real property located at 1217 South 7th Street, 341-517 West Hatch Road, and 835 North Hart Road, Modesto ("Property Group Three").   The parties dispute whether this notice was accurate and whether the property should have been sold.

On or about June 25, 2001, Plaintiffs allege Defendants entered into an oral agreement with Terry Hamilton, which was fully performed by Terry Hamilton, to postpone the trustee's sale of Property Group Three for one week in exchange for (1) payment by Terry Hamilton of $2,000; (2) a promise by Terry Hamilton not to file bankruptcy, and (3) a promise by Terry Hamilton not to transfer Property Group Three to any third party without the written consent of the 1986 Trust (Trust 1).  ("Agreement 2")

Plaintiffs further allege that they "reasonably believed Defendants' fraudulent

---

[1] Preliminarily, the court notes that the facts submitted by the parties are difficult to follow.  Both parties have cited to facts in their statements of undisputed and disputed facts without putting them into the context of the overall claims.  Thus, the court has taken into account the allegations in the second amended complaint in addressing the pending motion.

The court also notes that in opposing Defendants' facts and submitting Plaintiffs' disputed facts, Plaintiffs only cite to exhibits containing many pages of deposition testimony. "A party opposing summary judgment must direct our attention to specific, triable facts. General references without page or line numbers are not sufficiently specific." Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) (citations omitted).  In the interest of moving this action along, the court has cited to the pages where it appears the proposed facts come from.

When a proposed fact is not supported by the deposition testimony and/or declaration, the court has changed the fact in this section to reflect what the evidence actually provides instead of the fact offered by the parties.

[2] It is possible that after 2002, Michael Brotheroton was also a trustee.  At his deposition, Henry Willms was unable to recall if Mr. Brotheroton was made a trustee.

representations and relief regarding forbearance on planned foreclosures and relied upon said representations to their detriment, allowing the Defendants to fraudulently foreclose on Property Group Three and Property Four."

Henry Willms allegedly breached his promise to postpone the trustee's sale of Property Group Three, Agreement 2.

On or about June 25, 2001, Trust 1 conducted the foreclosure sale of property Group Three.

After the foreclosure sale of Property Group Three on June 25, 2001, and not later than July 2, 2001, Plaintiffs allege Henry and Dolly Willms, on behalf of Trust 1, entered into another oral agreement with Terry Hamilton on behalf of Enviro -Save, Inc. ("ESI") ("Agreement 3").

Under the terms of Agreement 3, the parties allegedly agreed that, among other things, ESI would not attempt to stop the trustee's sale of Property Four in exchange for the right to re-purchase Property Group Three and Property Four after the foreclosure.

On or about July 2, 2001, Property Four was sold at a foreclosure sale.

Defendants have not sold Property Group Three or Property Four back to Plaintiffs.

Beginning on or about November 25, 2000, and ending no earlier than on or about December 30, 2002, Plaintiffs allege Henry Willms and Victor McClune intentionally intimidated Terry Hamilton to collect on the outstanding loans to Terry Hamilton and his related entities.

Plaintiffs allege Henry Willms and/or Victor McClune threatened to physically injure and maim Terry Hamilton; repeatedly implied that mobsters from the East Coast, whom Henry Willms knew and worked, with would kill or seriously injure Terry Hamilton; and took menacing pictures of Terry Hamilton, his immediate family members, their vehicles and made sketches of their places of employment.

Estates In Eagle Ridge, LLP ("Eagle Ridge") held a note on the Hood Lane Property in Colorado, owned by Trust 1.   Plaintiff Terry Hamilton stated in answers to interrogatories that

4

Henry Willms coerced Terry Hamilton to forgive the debt on December 27, 2000 or January 16, 2001.  See Pool Ex. D at 16.   In his declaration, Hamilton states that Willms is falsely claiming that there never was any intention that the note for $161,852 would be paid and it was simply a sham.   Hamilton states that the "loan has never been forgiven by me or Estates in Eagle Ridge."  See Hamilton Dec. at ¶ 18.

In or about late January 2001 / early February 2001, Defendants commenced foreclosure proceedings on the Weld County, Colorado Property ("Property One").

James Bateman called Hamilton in Spring 2001 and told him that Willms had conveyed a threat that, "The Family could have [Hamilton's] arms and legs broken."  Hamilton took the alleged threats from Willms seriously.

In January 2001, and on several other occasions, Plaintiffs allege Willms threatened Hamilton in telephone calls to Colorado and in person, stating that he could have Hamilton's legs and arms broken if Hamilton "gave [H. Willms] any shit."

Hamilton alleges that prior to May 2001, Willms had agreed to provide financing for the Weld County, Colorado development and then reneged on that agreement when Hamilton's prior financing failed to materialize.

In or about February 2001, Willms commenced an eviction of Hamilton from the property located at 5401 Hood Lane ("Property Two").

About the time of the eviction proceedings began on Property Two, Plaintiffs allege Hamilton began receiving threats from Willms by telephone.

Shelley Shahen[3] was to deliver the written Agreement 2 to Henry Willms on the courthouse steps.   Shahen arrived at the courthouse steps without the $2,000.   Shahen left to obtain the $2,000.   Before Shahen arrived back at the courthouse with the $2,000, Property Group Three was sold at the foreclosure sale.

The forbearance agreements allegedly breached by Defendants related to Property Group

---

[3]  Shelley Shahen is also referred to as Shelley Drewery.

Three and Property Four.

The collateral for Loan Three included Property Group Three, Property Four and Property Group Five.

Loan Three was for the sum of $750,000.

The parties dispute whether Plaintiffs ever tendered the amount outstanding on Loan Three. Defendants offer the declaration of Henry Willms that states that since the foreclosure on the properties securing Loan Three in summer 2001, "none of the Plaintiffs have ever tendered the amounts outstanding at the time of the foreclosure to me or anyone on my behalf, or on behalf of the foregoing Trusts to my knowledge." See Willms Dec. at ¶ 6. Plaintiffs offer the declaration on Terry Hamilton, which states a payment of $60,000 was made on Loan Three in February 2001. See Hamilton Dec. at ¶ 30. From these facts, it appears undisputed that Plaintiffs made a $60,000 payment prior to the foreclosure sale and Willms has received no amounts outstanding since the foreclosure sale.

On January 18, 2002, Eagle Ridge filed a Chapter 11 petition in the United States Bankruptcy Court, District of Colorado. In its Statement of Financial Affairs, Eagle Ridge was asked to "List all losses from . . . theft . . . within one year immediately preceding the commencement of this case or since the commencement of this case . . . ." Eagle Ridge checked the box marked "None."

The foreclosure sale on the Weld County Property (also called Property One) occurred on May 23, 2001, within one year of Eagle Ridge's bankruptcy.

In its bankruptcy, Eagle Ridge never disclosed any type of claim, right, or other cause of action against any Defendant. Plaintiff does not specifically dispute this fact. However, Plaintiff offers evidence in the form of Hamilton's declaration that he did not include information about the foreclosure on the advice of his attorney because it was unclear whether Eagle Ridge or the individuals should pursue the claim. See Hamilton Dec. at ¶ 41. Hamilton never amended the bankruptcy schedules "because of the success in the other suit." See id.

No claims are listed against any Defendant in Eagle Ridge's bankruptcy schedules.

Terry Hamilton and Sharon Hamilton were the owners of the real property located at 835 North Hart Road, Modesto, California.

Westamerican Bank ("WAB") held a Deed of Trust against the North Hart Road Property, which secured a loan in the approximate amount of $100,000 ("the WAB Note and Deed of Trust").

In or about November 2000, WAB caused to be recorded a Notice of Default and Election to Sell Under the Deed of Trust against the North Hart Road Property.   Plaintiff does not dispute the existence of the WAB Note nor the fact that there was a default on the WAB Note.

On or about February 12, 2001, WAB caused to be recorded a Notice of Trustee's Sale for the North Hart Road Property.

In or about March 2001, WAB assigned its Deed of Trust to Henry Willms, and caused to be recorded the Assignment of Deed of Trust in the Stanislaus County Recorder's Office.

The parties dispute the amount the foreclosure trustee received in satisfaction of the WAB Note.  Defendants provide evidence, in the form a declaration from Debra Berg, that the trustee sale officer received a cashier's check for $86,079.70, made payable to W.T. Capital, in satisfaction of the WAB Note.   Plaintiffs offer evidence, in the form of Hamilton's declaration, that Hamilton paid $100,000 to W.T. Capital for the WAB Note.

On April 23, 2001, the foreclosure trustee recorded a Deed of Reconveyance for the WAB Deed of Trust.

Defendants offer as an undisputed fact that since the reconveyance, Plaintiffs have never tendered the amount outstanding on the WAB Note.   Defendants provide Willm's Declaration, which states that since the reconveyance, no one has tendered the amount outstanding on the WAB Note.  See Willms Dec. at ¶ 9.   It is unclear why Defendants offer this as evidence because Willms also declares the entire amount outstanding on the WAB Note was paid in April 2001.  See Willms Dec. at ¶ 8.   In addition, Hamilton declares that he paid the WAB Note.  See

Hamilton Dec. at ¶ 35.   Because there is no evidence that Hamilton or any Plaintiff still owes money on the WAB Note, Defendants' proposed fact will be disregarded.

**B. Plaintiff's Additional Material Facts**

The parties dispute whether Hamilton made arrangement to have $2,000 available for Willms on June 25, 2001.   Willms testified that he went to get the money from Jim Bateman the morning of the sale.   See Willms Depo. at 267.   Willms testified that Bateman told him that he did not have any money and he did not know anything about the agreement.   See id. at 268-69. Bateman testified that Willms was scheduled to come to his house to pick up the $2000.   See Bateman Depo. at 57-58.   Bateman testified that Willms never showed up.   See id. at 58-59.

Shelley Shahen, Hamilton's daughter, delivered the forbearance agreement to Willms. See Shahen Depo. at 23-25, 29-30.   When Willms told Shahen he did not have the money, Shahen left immediately, went to a bank, got $2000, and gave it to Willms within ten minutes. See id. at 30-31.   Willms told her it was too late.   See id. at 31.

In February 2001, Hamilton paid $60,000 to Willms on Loan 3 as part of a release agreement.   See Hamilton Dec. at ¶ 30.   Hamilton understood the payment would go to interest first and then principle.   See id.

On January 16, 2001, Hamilton gave additional collateral in the amount of $250,000 to Willms in the form of a deed of trust on the Leslie Street Property.[4]   See Hamilton Dec. at ¶ 31. Willms claims that he never agreed to accept the Leslie Street Property as collateral.   See id. However, Willms did not return the deed of trust after it was provided and ultimately sold the note to a third party.   See id.

Interest on the note was prepaid until January 31, 2001.   See Hamilton Dec. at ¶ 32.

Willms agreed to the forbearance in exchange for a payment of $2000 and Hamilton's promise not to file bankruptcy.   See Willms Depo. at 189-90.

---

[4]   Plaintiffs claim the transaction occurred on February 16, 2001, was for $150,000, and was to cover defaults that may have existed.   The cited evidence does not confirm these facts, and they will not be considered.  The above fact reflects Hamilton's declaration.

In reliance on the forbearance agreement, Hamilton did not file bankruptcy. <u>See</u> Hamilton Dec. at ¶ 25, 27, & 28. Hamilton had already paid to have the paperwork prepared to file bankruptcy. <u>See id</u>. at 25.

Willms told Hamilton not to interfere with the foreclose of Property Group Four and promised to sell property back to Hamilton if Hamilton paid amounts due and did not file bankruptcy. <u>See</u> Hamilton Dec. at ¶ 27.

Hamilton relied on Willms because Willms controlled Hamilton's properties and promised to get them back. <u>See</u> Hamilton Dec. at ¶ 28.

Willms acquired the WAB Note through the 1982 Trust (Trust 2). The loan for which the Hart Road was collateral, 1098, was made by the 1986 Trust (Trust 1).

Willms was not a trustee of the 1982 Trust. <u>See</u> Willms Depo. at 157-58.

Willms did not disclose to Hamilton that he had acquired the WAB Note. <u>See</u> Hamilton Dec. at ¶ 35.

Willms demanded that Hamilton pay off the WAB Note if he wanted to keep his house. <u>See</u> Hamilton Dec. at ¶ 35.

Hamilton advanced a total of $100,000 to the trustee, W.T. Capital, to pay off the WAB Note. <u>See</u> Hamilton Dec. at ¶ 36.

Willms never provided an accounting of the amounts due on Loan 1098 until after the foreclosures had taken place. <u>See</u> Hamilton Dec. at ¶ 33.

Willms insisted that Hamilton include his personal residence on Hart Road as collateral for Loan 1098. <u>See</u> Hamilton Dec. at ¶ 16. Hamilton had not offered the Hart Road Property. <u>See id</u>. Willms insisted at the last minute that the Hart Road Property and Hatch Road Property be included as collateral. <u>See id</u>. Hamilton did not wish to put his home at risk and let Willms know that. <u>See id</u>. Willms' response was that he wanted it simply as additional protection and that he would not foreclose on it or the Hatch Road Property, but wanted them to act as a buffer in the event there was a shortfall from the sale or refinance of the other properties. <u>See id</u>.

1    Had Hamilton known that the 1982 Trust owned the WAB Note, Hamilton would not

2 have made the advance.   See Hamilton Dec. at ¶ 33.

3    As collateral for the Weld County Property, Hamilton provided Willms not just the Weld

4 County Property but a deed of trust on the Chemical Way Property.    The Chemical Way

5 Property was sold to Kona Ventures.   Starting in May 2001, Kona Ventures made payments on

6 the notes against the property, including $150,000.   See Hamilton Dec. at ¶ 39.   The payments

7 made by Kona were never credited towards Loan 1091.   See Hamilton Dec. at ¶ 39.

8    The eviction proceeding in Colorado was dismissed for lack of prosecution.   See

9 Hamilton Dec. at ¶ 44.

10    Hamilton, through Eagle Ridge, sold Weld County Property to Willms for $497,500.

11 Willms gave Eagle Ridge a note for $161,852.35.   See Hamilton Dec. at ¶ 18.

## LEGAL STANDARD

13    Summary judgment is appropriate when it is demonstrated that there exists no genuine

14 issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

15 Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

16 Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

17 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th

18 Cir. 1984).

19           Under summary judgment practice, the moving party
             [A]lways bears the initial responsibility of informing the district
20           court of the basis for its motion, and identifying those portions of
             "the pleadings, depositions, answers to interrogatories, and
21           admissions on file, together with the affidavits, if any," which it
             believes demonstrate the absence of a genuine issue of material
22           fact.

23 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   "[W]here the nonmoving party will bear the

24 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

25 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

26 file.'"   Id.   Indeed, summary judgment should be entered, after adequate time for discovery and

27

28                                        10

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).   In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.   Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

//

11

**DISCUSSION**

**A. Objection and Motion to Strike Untimely Opposition**

Defendants contend that the court should strike Plaintiffs' opposition because it was not timely served.   Local Rule 78-230(c) provides:

> (c) Opposition and Non-Opposition. Opposition, if any, to the granting of the motion shall be in writing and shall be filed with the Clerk not less than fourteen (14) days preceding the noticed (or continued) hearing date. Opposition shall be personally on opposing counsel not less than fourteen (14) days preceding the hearing date (personal service) or mailed or electronic service not less than seventeen (17) days preceding the hearing date. . . . .  No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party.

Defendants claim that Plaintiffs filed and served their opposition and supporting documents on Monday, November 7, 2005, after 4:30 p.m., fourteen days before the hearing.

Preliminarily, the court notes that the fact Plaintiffs did not file or serve their opposition until after 4:30 p.m. did not violate the Local Rules.  Local Rule 5-134 (b) provides that a document will be deemed filed on a particular day if filed prior to midnight (Pacific Time) on that business day unless the court orders that the document be filed by a time certain.   Because the opposition was filed on November 7, 2005, fourteen days before the hearing, the document was timely filed.

However, Defendants correctly point out that Plaintiffs did not serve their opposition in compliance with Local Rule 78-230.   Plaintiffs have not filed a proof of service indicating service of the opposition.  As such, it appears Plaintiffs served Defendants electronically at the same time Plaintiffs filed the opposition with the court.   Defendants confirm that they received the opposition electronically on November 7, 2005, after 4:30 p.m.   Pursuant to Local Rule 78-230(c) an opposition shall be mailed or electronically serviced not less than seventeen  days preceding the hearing date.   In this case, seventeen days would be November 4, 2005.   Thus, Plaintiffs violated the Local Rules.

Despite Plaintiffs' late service on Defendants, the court will not strike Plaintiffs'

opposition.   The remedy for any late opposition in the Local Rules is to not allow the opposing party to be heard at oral arguments.   Local Rule 78-230(c).[5]   Nothing in the Local Rules nor the Federal Rules of Civil Procedure requires the court to strike an opposition that is served late. The court declines to strike the opposition here.   The purpose behind requiring service seventeen days before the hearing is that service, unlike filing, can be completed before an opposing party actually receives a document.   The additional three days is given to allow for the time between the opposing party's service and the moving party actually receiving the opposition.   Local Rule 78-230(c) allows for filing fourteen days before the hearing, and allows for personal service on the moving party fourteen days before the hearing.   Thus, Local Rule 78-230(c) contemplates that fourteen days is sufficient time for both the court and moving party to have an opposition in their possession prior to a hearing.   Here, all evidence before the court indicates that Defendants did in fact have the opposition in their possession fourteen days before the hearing.   At a minimum, Defendants had it in their possession thirteen full days before the hearing.   While Plaintiffs technically violated the Local Rules, the court finds that Defendants have not been so prejudiced by Plaintiffs' violation that the court should strike the opposition.   Accordingly, the court will consider the motion and opposition in rendering its opinion on Defendants' motion for summary judgment.

**B.  Second Claim – Fraud Regarding Forbearance Agreements**

Defendants request summary judgment on the second claim for relief.   The second claim asserts that Willms, acting on behalf of the 1986 Trust (Trust 1), fraudulently represented that he would provide accountings and he would not foreclose on Property Group Three.   Plaintiffs assert that Defendant Willms allegedly promised to provide an accounting and delay the foreclosure of Property Group Three if Hamilton would not file bankruptcy and pay $2000 for a forbearance of the sale.

---

[5]  Because the court found this motion could be decided without oral arguments, the court declined to have the hearing and took the motion under submission.

1    The elements of fraud are: (1) a misrepresentation (false representation, concealment, or

2   nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce

3   reliance; (4) justifiable reliance; and (5) resulting damage.  Robinson Helicopter Co., Inc. v.

4   Dana Corp., 34 Cal.4th 979, 990 (2004);  Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).

5          "Promissory fraud" is a subspecies of the action for fraud and deceit. A promise to
          do something necessarily implies the intention to perform; hence, where a promise
6          is made without such intention, there is an implied misrepresentation of fact that
          may be actionable fraud.  An action for promissory fraud may lie where a
7          defendant fraudulently induces the plaintiff to enter into a contract.

8   Lazar, 12 Cal.4th at 638 (internal citations omitted).    The application of this doctrine is clear

9   when the defendant makes an affirmative promise without any intention to perform that promise.

10  See e.g.,  Engalla v. Permanente Medical Group Inc., 15 Cal.4th 951, 973-74 (1997) (promise of

11  expeditious arbitration); Lazar, 12 Cal.4th 631 (promise of employment).

12  ***1.  Evidence of Intention to Honor Promise***

13          Defendants contend that there is no evidence that Willms did not intend to honor his

14  promise at the time it was made.   Something more than nonperformance is required to prove the

15  defendant's intent not to perform his promise.   Tenzer v. Superscope, Inc., 39 Cal.3d 18, 30

16  (1985).  However, fraudulent intent must often be established by circumstantial evidence, and it

17  may be "inferred from such circumstances as defendant's insolvency, his hasty repudiation of the

18  promise, his failure even to attempt performance, or his continued assurances after it was clear he

19  would not perform." Tenzer, 39 Cal.3d at 30.

20          Here, the allegation that Willms did not intend to perform on his promise to delay the

21  foreclosure and provide an accounting is supported by evidence other than the fact Willms did

22  not perform.   Taking the evidence in the light most favorable to Plaintiff, the agreement was

23  made on June 25, 2001.   On June 25, 2001, Willms was to go to Bateman's residence and pick

24  up the $2000.   Based on Plaintiff's evidence, Willms never even went to Bateman's residence.

25  The failure to even attempt performance is circumstantial evidence that Willms never intended to

26  preform.   In addition, Shelly Shahen told Willms at the courthouse that she would immediately

27

28                                              14

get the $2000.    Yet, Willms allowed the sale to proceed even though Shahen was only gone ten

minutes.    The agreement and the actions Willms failed to take to obtain the money occurred so

closely together that an inference can be made that Willms never intended to preform at the time

he made the agreement.    Thus, there is a disputed issue of fact on whether Willms made the

agreement never intending to preform.

### 2.  Justifiable Reliance

Defendants contend that Plaintiffs' reliance on Willms' statements was not justified.

Justifiable reliance is determined "in light of the plaintiff's intelligence and experience." Atari

Corp. v. Ernst & Whinney, 981 F.2d 1025, 1031 (9th Cir.1992). In Seeger v. Odell, 18 Cal.2d 409

(1941), the California Supreme Court stated as follows:

> If the conduct of the plaintiff in the light of his own intelligence and information
> was manifestly unreasonable . . . however, he will be denied a recovery. . . . He
> may not put faith in representations which are preposterous, or which are shown
> by facts within his observation to be so patently and obviously false that he must
> have closed his eyes to avoid discovery of the truth. . . .

Id. at 415.  Whether a party's reliance on alleged misrepresentations is reasonable is a question of

fact. Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1239 (1995).

There is a disputed issue of fact on whether Hamilton's reliance was justified.   There is

evidence that three days prior to the agreement at issue in this claim, on June 22, 2001, Willms

and Hamilton agreed to continue another sale.  See Hamilton Dec. at ¶ 22.    This sale was

continued.  It provides evidence that Hamilton may not have been manifestly unreasonable in

believing this agreement would be honored.  In addition, when Hamilton and Willms agreed to

use the Hart Road Property and Hatch Road Property as collateral for Loan 1098, Willms stated

that he simply wanted additional protection and that he would not foreclose on these properties.

See Hamilton Dec. at ¶ 16.   This evidence provides an inference that Hamilton's reliance was

justifiable.

Defendants contend Hamilton did not justifiably rely on the promise because of Willms'

prior alleged improper conduct.  Where person learns one representation is false, he may not

15

assume other representations are true.  See Roland v. Hubenka, 12 Cal.App.3d 215, 225 (1970) (knowledge of seller's false representation).   If a person distrusts the defendant's honesty from the beginning, he cannot have had a justifiable reliance on the defendant's false representation. Julrik Productions, Inc. v. Chester, (1974) 38 Cal.App.3d 807 (1972).  There is evidence that in January or February 2001, Defendants commenced foreclosure proceedings on the Weld County Property and began eviction proceedings.   There is evidence that shortly after Hamilton began receiving threats from Willms.   While this evidence does indicate that a reasonable person would have been cautious of Willms and may have even been scared of him on June 25, 2001, the court cannot find as a matter of law no reasonable person would have entered into an agreement with Willms regarding property in which Willms already had an interest.   The agreement was not a new business deal.   In addition, the problems with Willms over the Weld County Property appear to have involved threats.  There are no allegations that Willms failed to comply with promises.

Defendants also point to a failed agreement regarding financing to indicate that Hamilton could not have justifiably relied on Willms' promise.   The evidence of this agreement is found in Statement of Undisputed Fact 18, which states: "Terry Hamilton alleges that prior to May 2001, Henry Willms had agreed to provide financing for the Weld County, Colorado development and the reneged on that agreement when Terry Hamilton's prior financing failed to materialize." Too little is known about this agreement for the court to find as a matter of law that Hamilton's reliance on the forbearance agreement underlying claim two was not justified.   It is not completely clear what the Weld County Property agreement was for.   From the submitted facts, it appears this agreement was not carried out because of an intervening event – Hamilton's prior financing did not materialize.   Because it appears the reason the promise was not fulfilled was an event that occurred after the agreement was made, there is no indication that Willms made the agreement knowing his promise was false at the time it was made.   Thus, this situation is not analogous to the agreement at issue in this claim.

Given the entire history between the parties, Defendants do have an argument that Hamilton should have been suspicious of Willms.  A trier of fact may well agree that Hamilton did not justifiably rely on Willms.   However, there is no evidence currently before the court that Willms had previously made a promise to Hamilton knowing the promise was false at the time it was made.   Without a similar misrepresentation, the court declines to find that Plaintiffs will be unable to establish justifiable reliance.  Thus, Defendants are not entitled to summary judgment on the second claim.

**C. Third Claim – Breach of Agreement**

Defendants request summary judgment on the third claim.   The third claim alleges breach of contract to forbear on foreclosures.   This claim is based on Willms' failure to follow the terms of a contract, entered into with Hamilton on June 25, 2001, to delay the foreclosure of Property Group Three.    The elements of breach of contract are (1) a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to plaintiff.  Reichert v. General Ins. Co. of America,  68 Cal.2d 822, 830 (1968).

***1.  Plaintiff's Performance***

Defendants contend that Hamilton did not perform his obligations under the agreement because Hamilton never paid the $2000.   Defendants point to evidence that Shelly Shahen arrived at the courthouse steps without the $2000.  By the time she returned with the money, the property had been sold.

Plaintiffs contend that Hamilton's actions constituted substantial performance.   If a defendant by his own acts has prevented performance of a contract, the defendant may not rely on the lack of performance.  Patrick J. Ruane, Inc. v. Parker, 185 Cal.App.2d 488, 504 (1960).  "Prevention of performance by the promisee is equivalent to performance by the promisor."  Crawford v. Pioneer Box & Lumber Co., 105 Cal.App. 760, 769 (1930).   For example in a breach of contract case brought by cucumber farmers, the defendant packing house could not claim the plaintiff had failed to perform on the contract if there was evidence that the defendant

17

had refused to accept the cucumbers.  See Unruh v. Smith, 123 Cal.App.2d 431, 436-37 (1954).

Here, there is a disputed issue of fact on whether Willms' own actions caused Willms to not receive the $2000.   There is evidence that Willms was to go to Bateman's house to obtain the money.   There is evidence that Willms never arrived.   In addition, there is evidence that it only took Shahen ten minutes to get the $2000 upon learning Willms still did not have it.   From this evidence, a trier of fact could find that Willms failed to take reasonable steps to accept the money.   Thus, taking the facts in the light most favorable to Plaintiff, the court cannot find that Plaintiffs' breach of contract claim fails because Hamilton did not perform his obligation to give Willms $2000.

## 2.  Tender

Defendants contend that in the prayer for relief on the breach of contract claim Plaintiffs seek to set aside the wrongful foreclosure sale and restore title to the properties to Plaintiffs.   A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.  Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971).   Defendants provide evidence that Plaintiffs have never tendered the amount outstanding on the loans.   In their opposition, Plaintiffs contend they do not know how much Defendants believe they owe because Defendants have not provided an accounting.   Regardless, Plaintiffs appear to concede that they are unable to tender payment for the properties.   Plaintiffs ask that the court award them monetary damages.   Accordingly, the court will strike Plaintiffs' request to set aside the foreclosure sale and restore title from the second amended complaint.

## D.  Fifth Claim – Theft

Defendants request summary judgment on the fifth claim for relief.   The fifth claim for relief alleges theft of Weld County Property pursuant to Colorado Revised Statute § 18-1-401.   In the opposition, Plaintiffs state this claim is really brought under Colorado Revised Statute § 18-4-401.   In the opposition, Plaintiffs also allege this claim is really a claim for fraud or concealment.   This claim is based on Defendants' foreclosure of property in Weld County,

18

Colorado by making allegedly fraudulent statements about the amount owed on the loan. Plaintiffs claim that Defendants did not properly give credit for $150,000 in payments made on the loan.

Title 18 is the Criminal Code of Colorado.   Section 18-4-401 provides:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or
(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

The court has already found that Plaintiffs cannot maintain a civil cause of action pursuant to Section 18-4-401, and nothing in the opposition convinces the court that Plaintiffs can proceed on this theory.  The Colorado Supreme Court has found that Section 18-4-405 was intended to serve primarily a punitive, rather than a remedial, purpose.  In re Marriage of Allen, 724 P.2d 651, 656 (Colo. 1986).   Thus, to the extent Plaintiffs rely on Colorado Revised Statue § 18-4-401 as the basis of their fifth claim, summary judgment in favor of Defendants is appropriate because Plaintiffs have not shown how they have a private cause of action pursuant to this criminal statute.[6]

In the opposition, Plaintiffs claim this claim is really one for misrepresentation or concealment.   In prior orders the court has assumed that this claim was for fraud or concealment.  As such, the court finds that all parties have been on notice that to the extent the court found a theft claim not available, this claim would proceed under Colorado law as a claim for fraud.

Limited undisputed facts have been provided about the fifth claim for relief.   However,

---

[6] At least one district court has implied that theft in violation of Section 18-4-401 could be a predicate act on which to base a RICO claim.  See Southway v. Central Bank of Nigeria, 149 F.Supp.2d 1268, 1272 (D. Colo. 2001).   However, Plaintiff's fifth claim appears to be based on a separate private cause of action and not merely a predicate act in support of Plaintiffs' RICO claim.

1   the basic allegation in the second amended complaint is that when Defendants foreclosed on the

2   Weld County Property (Property One), Defendants made fraudulent representations as to the

3   amount owed on Loan 1091 (Loan One).   Plaintiffs provide evidence that as collateral for the

4   Weld County Property, Hamilton provided Willms a deed of trust for not just the Weld County

5   Property, but a deed of trust on the Chemical Way Property.   The Chemical Way Property was

6   later sold to Kona Ventures.   Starting in May 2001, Kona Ventures made payments on Loan

7   1091 totaling $150,000.   Plaintiffs claim the payments made by Kona were never credited

8   towards the 1091 Note on the Weld County Property before Defendants foreclosed.   See

9   Hamilton Dec. at ¶ 39.   In the second amended complaint, Plaintiffs allege that the amounts

10   claimed by Defendants to be owed and the amounts in arrears as represented to the Public

11   Trustee of Weld County and to the Weld County District Court were in error.

12         Based on the facts alleged in the second amended complaint and facts submitted by

13   Plaintiffs, a claim for fraudulent misrepresentation under Colorado law is not available.   The

14   elements of fraudulent misrepresentation under Colorado law are: (1) a fraudulent

15   misrepresentation of material fact; (2) the plaintiffs' reliance on the material representation; (3)

16   the plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting

17   in damages. M.D.C./Wood, Inc. v. Mortimer, 866 P.2d 1380, 1382 (Colo.1994); Nielson v.

18   Scott, 53 P.3d 777, 780 (Colo.App. 2002).   The problem with the allegations and facts

19   surrounding the fifth claim for relief is that the allegations and evidence indicate the false

20   representations regarding the amount owed on the note were made to the Public Trustee of Weld

21   County and to the Weld County District Court.   There are no allegations, let alone submitted

22   evidence, indicating that Plaintiffs, as opposed to officers in Weld County, relied on the false

23   representations.   Because there are no allegations or evidence indicating that Plaintiffs relied on

24   the allegedly false representations about the amount owing on this loan, Plaintiffs' claim for

25   misrepresentation fails as a matter of law.   The court finds the fifth claim for relief cannot

26   proceed on a fraudulent misrepresentation theory.

27

28                           20

1    Plaintiffs also claim the fifth claim is for fraudulent concealment.   The elements of

2    fraudulent concealment under Colorado law are: (1) concealment of a material existing fact that

3    in equity and good conscience should be disclosed; (2) knowledge on the part of the party against

4    whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the

5    part of the one from whom the fact is concealed; (4) the intention that the concealment be acted

6    upon; and (5) action on the concealment resulting in damages.   Eckley v. Colorado Real Estate

7    Com'n, 752 P.2d 68, 78-79 (Colo. 1988); Kopeikin v. Merchants Mortgage & Trust Corp., 679

8    P.2d 599, 601 (Colo. 1984); Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458 (1937).

9    Unlike a claim for misrepresentation, it does not appear from the face of the second amended

10   complaint that Plaintiffs' motion for fraudulent concealment fails as a matter of law.   Nothing in

11   the basic elements for fraudulent concealment require that the concealment have been made to

12   Plaintiffs.   Thus, it appears possible that Plaintiffs can maintain a claim for fraudulent

13   concealment even though the alleged concealment was made to the Public Trustee of Weld

14   County and the Weld County District Court.   Defendants have failed to meet their initial burden

15   of informing the court how a claim for fraudulent concealment is unavailable and citing to

16   undisputed facts that demonstrate the absence of a genuine issue of material fact on Plaintiffs'

17   claim of fraudulent concealment.   See Celotex Corp., 477 U.S. at 323.   Thus, the fifth claim may

18   proceed on a fraudulent concealment theory.

19    Defendants contend that any claim for theft is barred because Eagle Ridge never disclosed

20   such a claim in its bankruptcy petition.   The undisputed facts reveal that on January 18, 2002,

21   Eagle Ridge filed a Chapter 11 petition in the United States Bankruptcy Court, District of

22   Colorado.   In its Statement of Financial Affairs, Eagle Ridge was asked to "List all losses from .

23   . . theft . . . within one year immediately preceding the commencement of this case or since the

24   commencement of this case . . . ."   Eagle Ridge checked the box marked "None."   In its

25   bankruptcy, Eagle Ridge never disclosed any type of claim, right, or other cause of action against

26   any Defendant.  Plaintiffs offer evidence that they did not include information about the

27

28                                          21

1    foreclosure on the advice of Hamilton's attorney because it was unclear whether Eagle Ridge or

2    the individuals should pursue the claim.  See Hamilton Dec. at ¶ 41.   Hamilton never amended

3    the bankruptcy schedules to include any claims about the foreclosure "because of the success in

4    the other suit."  See id.

5            "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent

6    positions, precludes a party from gaining an advantage by taking one position, and then seeking a

7    second advantage by taking an incompatible position."   Wagner v. Professional Engineers in

8    California Government, 354 F.3d 1036, 1044 (9th Cir. 2004).  "[J]udicial estoppel applies to a

9    party's stated position, regardless of whether it is an expression of intention, a statement of fact,

10   or a legal assertion."   Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir.1997).  The purpose of

11   judicial estoppel is to prevent the use of inconsistent assertions that would result in an affront to

12   judicial dignity and a means of obtaining unfair advantage.  Rockwell International v. Hanford

13   Atomic Metal Trades, 851 F.2d 1208, 1210 (9th Cir.1988).

14           Here, there is simply insufficient information to find that Plaintiffs' fifth claim for

15   fraudulent concealment under Colorado law is barred because it was never raised in the

16   bankruptcy.   No party has briefed whether such a claim should have been brought up in the

17   bankruptcy proceeding.   No party has briefed the legal effect of Eagle Ridge not raising a

18   fraudulent concealment claim in the bankruptcy.   Ultimately, the burden of proof is initially on

19   Defendants to show that the fifth claim for relief is barred because Plaintiffs did not allege such a

20   claim in Eagle Ridge's bankruptcy proceedings. See Celotex Corp., 477 U.S. at 323.   Thus, the

21   fifth claim for relief will proceed to the extent it is based on a fraudulent concealment claim

22   under Colorado law.

23   **E.  Sixth Claim – Fraud on North Hart Road Property**

24           Defendants request summary judgment on the sixth claim for relief.  The sixth claim for

25   relief alleges fraud regarding the North Hart Road Property.   This claim concerns Willms'

26   alleged misrepresentations to Hamilton that induced Plaintiffs to retire a $100,000 debt owned by

27

28                                                    22

WAG that was senior to Defendants' liens on the North Hart Road Property.   As discussed above, the elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.   <u>Robinson</u>,  34 Cal.4th at 990.

It is undisputed that Terry Hamilton and Sharon Hamilton owed the Hart Road Property. Plaintiff provides evidence that the Hart Road Property was collateral for Loan 1098, which was made by the 1986 Trust.   It is undisputed that WAB held a Deed of Trust against the Hart Road Property, which secured a loan in the approximate amount of $100,000 ("the WAB Note and Deed of Trust").   The parties agree the WAB deed of trust was senior to Defendants' deed of trust.

In or about November 2000, WAB caused to be recorded a Notice of Default and Election to Sell Under the Deed of Trust against the North Hart Road property.  On or about February 12, 2001, WAB caused to be recorded a Notice of Trustee's Sale for the North Hart Road property. The parties agree the WAB Note was in default.

In or about March 2001, WAB assigned its Deed of Trust to Willms, and caused to be recorded the Assignment of Deed of Trust in the Stanislaus County Recorder's Office.  Plaintiffs offer evidence Willms did not disclose to Hamilton that he had acquired the WAB Note.   <u>See</u> Hamilton Dec. at ¶ 35.

Plaintiff offers evidence that Willms demanded that Hamilton pay off the WAB Note if he wanted to keep his house.   <u>See</u> Hamilton Dec. at ¶ 35.

The undisputed facts review that the foreclosure trustee received satisfaction of the WAB note.   On April 23, 2001, the foreclosure trustee recorded a Deed of Reconveyance for the WAB Deed of Trust.

Plaintiff provides evidence that had Hamilton known that the 1982 Trust owned the WAB note, Hamilton would not have made the advance.   <u>See</u> Hamilton Dec. at ¶ 33.

### *1.  Evidence of Intention to Honor Promise*

Defendants contend that there is no evidence that Willms did not intend to honor his promise at the time it was made.   As discussed above, something more than nonperformance is required to prove the defendant's intent not to perform his promise.   Tenzer, 39 Cal.3d at 30.  However, fraudulent intent can be inferred from other circumstances.   Id. 39 Cal.3d at 30.

There is a disputed issue of fact on whether Willms intended to honor his promise not to foreclose on Hamilton's house at the time he allegedly promised Hamilton that if he paid off the WAB Note he would not foreclose.   There is evidence that Willms did not tell Hamilton that the WAB Note was now owned by the 1982 trust.   Hamilton provides evidence that had he known the WAB Note was owned by the 1982 trust, he would not have paid it off.   The fact that there is evidence Willms may have been concealing what entity would benefit from payment of the WAB Note, is circumstantial evidence of Willms' state of mind.   Willms' concern that a possible foreclosure on the WAB Deed of Trust would hurt a junior deed of trust owned by the 1986 trust is less substantial if Willms has an interest in and/or control over both deeds of trust. The failure of Willms to tell Hamilton who owned the WAB Note is circumstantial evidence that Willms did not intend to honor his promise.   It is possible based on this evidence for a reasonable trier of fact to conclude that Willms wanted Hamilton to pay off the WAB Note to prevent Hamilton from using the money to stop other foreclosures.   Thus, the court finds a disputed issue of material fact on whether Willms intended to honor the alleged promise when he made it.

### *2.  Tender*

Defendants contend that in the prayer for relief, Plaintiffs seek to set aside the wrongful foreclosure sale and restore title to Plaintiffs.   A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust. Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971).

Despite Defendants' statement that Plaintiffs have failed to tender all amounts

1   outstanding on the WAB Note, Defendants own evidence establishes that all amounts were

2   tendered on the WAB Note.   Debra Berg states that the trustee sale officer received a cashier's

3   check for $86,079.70, made payable to W.T. Capital, in satisfaction of the WAB loan.   A Deed

4   of Reconveyance was filed for the WAB  Deed of Trust.  Willms also declares that the entire

5   amount outstanding on the WAB Note was paid in April 2001.  See Willms Dec. at ¶ 8.  Thus,

6   the undisputed facts establish that Plaintiffs have tendered all amounts owing on the WAB Note.

7          However, Plaintiffs are still not entitled to set aside the foreclosure sale.   The property

8   was ultimately foreclosed on by Defendants on the loan made by the 1986 Trust, not the WAB

9   Note.   Plaintiffs concede that they are unable to tender payment for the property.   Plaintiffs ask

10  that the court still award them the monetary damages.   Accordingly, the court will strike

11  Plaintiffs' request to set aside the foreclosure sale and restore title.

12  ***3.  Damages***

13         Defendants contend that they are entitled to summary judgment because Plaintiffs cannot

14  show they were damaged by Willms' alleged misrepresentation.   The parties agree that the WAB

15  Note and Deed of Trust existed.   Defendants argue that at some point Plaintiffs would have had

16  to satisfy the WAB Note.   Thus, Defendants argue that Plaintiffs were not damaged by paying

17  off the WAB Note.

18         There is a disputed issue of fact on the amount of Plaintiffs' damages for this claim.

19  While Defendants are correct Plaintiffs would have owed the money regardless, Hamilton has

20  provided evidence that if he knew paying off the note would not save his house and knew the

21  1982 Trust owned the WAB note, Hamilton would not have paid the WAB Note.   Had Hamilton

22  not paid off the WAB Note, the money would be available for other things.   It is highly

23  speculative what position Plaintiffs would be in if the money had been used for other things and

24  the WAB Note remained on the Hart Road Property.   Plaintiffs' ultimate ability to prove

25  damages may be difficult.  However, the court finds Defendants are not entitled to summary

26  judgment merely because Plaintiffs owed money on the WAB Note regardless of Willms'

27

28                                                              25

1  actions.    Accordingly, summary judgment on the sixth claim for relief is not warranted.

2  **ORDER**

3  Based on the memorandum opinion and order, the court ORDERS that:

4  1.    Defendants' motion to strike the opposition is DENIED;

5  2.    Defendants' motion for summary judgment is GRANTED IN PART:

6  a.    Defendants are GRANTED summary judgment on the fifth claim for relief to the

7  extent it is based on a theft theory and a misrepresentation theory;

8  b.    The requests in the third claim for relief and sixth claim for relief to set aside

9  foreclosure sales and restore title are STRICKEN;

10  3.    In all other respects, the motion for summary judgment is DENIED.

11

12  IT IS SO ORDERED.

13  **Dated:   November 22, 2005**           _____/s/ Anthony W. Ishii_____
0m8i78                                UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  26