IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY D. HAMILTON, et al.,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>HENRY W. WILLMS, et al.,<br><br>　　　　　Defendants.<br>_____ | CV F 02-6583 AWI SMS<br><br>ORDER GRANTING MOTION FOR AWARD OF ATTORNEY FEES IN FAVOR OF REDWOOD TRUST AND DENYING MOTION FOR AWARD OF ATTORNEY FEES IN FAVOR OF SUSAN WILLMS THURSTON<br><br>(Document #399) |

This action proceeds on Plaintiffs' second amended complaint. The court had jurisdiction over the RICO claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Pending before the court is Redwood Trust Deed Services, Inc. ("Redwood Trust")'s and Susan Willms Thurston ("Thurston")'s motion for an award of attorney fees.

**PROCEDURAL HISTORY**

On June 11, 2003, Plaintiffs filed a second amended complaint. The first claim alleges a RICO violation pursuant to 18 U.S.C. §§ 1962(c) & 1962(d). The second claim alleges forbearance on foreclosure agreements concerning California properties. The third claim alleges breach of contract concerning foreclosures on California properties. The fourth claim alleges fraud in relation to a note taken on Colorado Property and is brought under Colorado law. The fifth claim alleges theft of Colorado Property in violation of Colorado law. The sixth claim alleges fraud in relation to California property and is brought under California law. The seventh

claim alleges theft of JCB's personal property in violation of California law.

On June 17, 2005, Redwood Trust Deed Services ("Redwood Trust") filed a motion for summary judgment.  On September 8, 2005, Plaintiffs filed a notice of non-opposition to Redwood Trust's motion.  On September 13, 2005, the court granted Redwood Trust's motion for summary judgment.

On June 16, 2005, Defendant Susan Willms Thurston ("Thurston") filed a motion for summary judgment.  On September 8, 2005, Plaintiffs filed a notice of non-opposition to Thurston's motion.  On September 13, 2005, the court granted Thurston's motion for summary judgment.

On December 15, 2005, Defendants filed a motion to enter separate judgment pursuant to Rule 54(b) in favor of Redwood Trust and Thurston.  In their January 6, 2006 filing and at the February 6, 2006 hearing, Plaintiffs indicated that they did not oppose the entry of judgment as to Redwood Trust or Thurston.  On February 10, 2006, the court granted Redwood Trust's and Thurston's motion for entry of judgment pursuant to Rule 54(b), and the Clerk of the Court entered judgment the same day.

On March 13, 2006, Redwood Trust and Thurston filed a motion for an award of attorney's fees.   Redwood Trust contends that the deeds of trust encumbering the properties securing Loan Three contained an attorney's fees provision, and Redwood Trust was a trustee on these deeds of trust.  Thurston contends that the Westamerica Bank Deed of Trust on the North Hart Road property contained an attorney's fees provision.  The Westamerica Bank Deed of Trust was assigned to Dolly Willms as trustee of the trust dated December 10, 1982 between Henry Willms and Dolly G. Willms, trustor or any successor trustee, for the benefit of Susan Willms Thurston and Catherine Willms Locke.   Thurston also contends that she is entitled to attorney's fees because the litigation against her was brought in bad faith.

On March 24, 2006, Plaintiffs filed an opposition.   Plaintiffs contend that none of the claims asserted against Redwood Trust are on the deeds of trust.    Plaintiffs contend that none

2

1  of the claims asserted against Thurston arise out of the Westamerica Bank Deed of Trust and that
2  Thurston is only a beneficiary of the 1982 Trust, and she is not the 1982 Trust.   Plaintiffs
3  contend that the action against Thurston was not in bad faith because until discovery was
4  conducted, Plaintiffs were acting in good faith by asserting claims against all people that
5  appeared to be involved in the conspiracy.
6       On March 30, 2006, Redwood Trust and Thurston filed a reply.   Redwood Trust and
7  Thurston contend that the fee provisions in the deeds of trust are sufficiently broad to encompass
8  the claims pled because Plaintiffs requested to set aside the foreclosure sales and Redwood Trust
9  and Thurston are entitled to fees because Plaintiffs would have been entitled to fees had they
10 won.

**DISCUSSION**

**A.  Redwood Trust**

The parties agree that Redwood Trust was the trustee on some of the deeds of trust securing the loans made by Defendants to one or more Plaintiffs.   Specifically, Redwood Trust was the trustee on the Deeds of Trust securing the property located at 675-695 Cedar Street, Berkeley, California and 1201 South 7th Street, Modesto, California, for which Plaintiff Environ-Safe, Inc. was the trustor.   Redwood Trust was the trustee on the Deeds of Trust securing the property located at 431-517 W. Hatch Road and 835 North Hart Road, Modesto, California, for which Plaintiffs Terry and Sharon Hamilton were the trustors.   Notices of trustee sales for these properties were published, and these properties were sold at foreclosure sales.   The parties agree that Redwood Trust conducted the trustee sale on Property Group Four.   The parties agree that these Deeds of Trust contained the following standard provision:

> **TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**
> . . . .
> (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights and powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

3

*1. Entitlement to Fees*

Redwood Trust contends that it is entitled to attorney's fees based on the Deeds of Trust because the complaint prayed that the foreclosure sales be set aside and that title to the properties foreclosed be restored.   Plaintiffs contend that the claims asserted against Redwood Trust did not affect the security, the rights or powers of the beneficiary, or involve any action or proceeding to foreclose the Deeds of Trust.

The court has reviewed the facts underlying the claims in this action.   The first claim alleges a RICO violation pursuant to 18 U.S.C. §§ 1962(c) & 1962(d).[1]   The first claim alleges that Defendants entire conduct in loaning Plaintiffs money and collecting on these loans constituted a pattern of racketeering activity, which included extortionate credit transactions, collection of an extension of credit by extortionate means, mail fraud, and wire fraud.   The second claim alleges forbearance on foreclosure agreements.  The second claim asserts that Defendant Henry Willms ("Willms"), acting on behalf of the 1986 Trust (Trust 1), fraudulently represented that he would provide accountings and he would not foreclose on Property Group Three.   Plaintiffs assert that Willms allegedly promised to provide an accounting and delay the foreclosure of Property Group Three if Plaintiff Terry D. Hamilton ("Hamilton") would not file bankruptcy and would pay $2000 for a forbearance of the sale.  The third claim alleges breach of contract to forbear on foreclosures.  This claim is based on Willms' failure to follow the terms of a contract, entered into with Hamilton on June 25, 2001, to delay the foreclosure of Property Group Three. The fourth claim alleges fraud in relation to a note taken on Colorado Property and is brought under Colorado law.[2]   This claim is based on a note Plaintiff Estates In Eagle Ridge LLAP ("Eagle Ridge") held on property it sold to Defendants subject to a note.   This claim alleges that Defendants took the note, refused to return the note, claimed ownership of the note, and threatened Hamilton with bodily harm or death should he fail to execute a release on the

---

[1] The court granted Defendants summary judgment on this claim.

[2] The court granted Defendants summary judgment on this claim.

note.  The fifth claim alleges theft of Colorado Property in violation of Colorado law.  This claim is based on Defendants' foreclosure of Plaintiffs' property in Weld County, Colorado by making allegedly fraudulent statements about the amount owed on the loan.  Plaintiffs claim that Defendants did not properly give credit for $150,000 in payments made on the loan.  The sixth claim alleges fraud in relation to California property and is brought under California law.  The sixth claim alleges fraud regarding the North Hart Road Property.   This claim concerns Willms' alleged misrepresentations to Hamilton that induced Plaintiffs to retire a $100,000 debt owned by Westamerica Bank that was senior to Defendants' liens on the North Hart Road Property.  The seventh claim alleges theft regarding JOB's personal property in violation of California law.

       The court has reviewed the complaint and previously filed documents concerning the complaint.   The court agrees with Plaintiffs that the claims and causes of action asserted against Redwood Trust did not "affect the security" – i.e. the properties that were subject to the Deeds of Trust and which secured the loans.  The claims relating to the Deeds of Trust allege fraud and breach of contract because Defendants allegedly did not honor their promises to not foreclose and/or misrepresented amounts owed on the loans.  These alleged fraudulent statements and agreements did not contain attorney's fees provisions.  Thus, the claims listed in the complaint do not appear to affect the property.  However, in the complaint Plaintiffs clearly sought as a remedy for Defendants' actions that the foreclosure sales be set aside and title to the properties be restored.  While it is unclear what claim or legal theory would have allowed the court to set aside the foreclosure sales and change title to the properties, Plaintiffs still requested this remedy in the complaint.

       An attorney fee provision in a contract may be applied to tort actions because parties may validly agree that the prevailing party be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.  <u>Johnson v. Siegel</u>, 84 Calliope.4th 1087, 1100-01 (2000); <u>Lerner v. Ward</u>, 13 Calliope.4th 155, 160 (1993).   The attorney fee provision in the Deeds of Trust was a standard one; it applied to Redwood Trust's

appearance in "any action or proceeding purporting to affect the security hereof . . . ." This provision is sufficiently broad to encompass actions in tort as well as contract, where the action or proceeding may impact the security. By requesting the foreclosure sale be voided and asking for return of the property, Redwood Trust, as the trustee who conducted some of the sales, had a duty to defend this action because Plaintiffs asked that title to the "security" be restored.

In <u>Valley Bible Center v. Western Title Ins. Co.</u>, 138 Cal.App.3d 931 (1983), the California Court of Appeal reversed a trial court's denial of a request for attorney fees and costs on a similarly worded deed of trust. The Court of Appeal held that under provisions contained in the deed of trust, the trustor who prevailed in an action to block a trustee's sale of a church following alleged default under a deed of trust was entitled to attorney fees pursuant to the reciprocity provisions of California Civil Code § 1717(a). <u>Valley Bible Center</u>, at 932-33. The standard language of that deed of trust was in all relevant respects similar to that of deeds of trust at issue here. Unlike <u>Valley Bible Center</u>, the question in the instant case does not involve a reciprocity issue under Civil Code § 1717, but <u>Valley Bible Center</u> is useful for its interpretation of the deed of trust clause as broad enough to encompass both tort and contract causes of action by the trustor challenging the trustee's rights under the trust deed. One difference between <u>Valley Bible Center</u> and this case is that in that case the security interest of the trustee were clearly threatened by the trustor's action to enjoin the foreclosure sale. Here the foreclosure sale had been successfully completed. Plaintiffs did not file a cause of action concerning the foreclosure sale, but as a remedy for other torts, Plaintiffs seek to set aside the foreclosure and sale. Because the requested remedy in this action affects the properties, this action comes within the plain language of the Deed of Trust allowing recovery of attorney fees for "any action or proceeding purporting to affect the security hereof."

Plaintiffs argue in their opposition that because the foreclosure sale has taken place, any opportunity that anyone had to claim fees should have been done during the foreclosure process. Plaintiffs are correct that because the property was sold, Redwood Trust's duties as trustee have

6

ended. However, Plaintiffs still sued Redwood Trust and asked that the foreclosure sale be set aside. Plaintiffs' exact theory against Redwood Trust is not entirely clear from either the complaint or later briefing. In fact, Plaintiffs eventually did not oppose granting summary judgment in favor of Redwood Trust. From the allegations in the complaint, it appears that the relationship between Plaintiffs and Redwood Trust is based on the Deeds of Trust and Redwood Trust's actions were premised upon a duty created by the Deeds of Trust– the duty to properly conduct the foreclosure sale. Plaintiffs' request in the complaint to set aside the foreclosure sales and return title to the property cannot be found to be independent of the Deeds of Trust and appears to have arisen from Redwood Trust's duties under the Deeds of Trust. Thus, the attorney's fees provision applies because Redwood Trust was required to appear in this action and Plaintiffs' claimed relief affects the Deeds of Trust's security.

### 2. *Amount of Fees*

A trial court has wide discretion to fix a reasonable amount of attorney fees for the prevailing party in a contract dispute. Gilbert v. Master Washer & Stamping Co., 87 Cal.App.4th 212, 220-21 (2001). An "experienced trial judge is the best judge of the value of professional services rendered in his court, [for purposes of awarding attorney fees] and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." Serrano v. Priest, 20 Cal.3d 25, 49 (1977).

"The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case." Serrano, 20 Cal.3d at 48, n. 23. The court generally should apply the lodestar method to both a statutory attorney fee award or a contractual attorney fee award, unless the statute or contract provided for another method of calculation. Flanders v. California Highway Patrol, 61 Cal.App.4th 629, 647 (1998); see also Ketchup v. Moses, 24 Cal.4th 1122, 1133-36 (2001); PCM Group, Inc. v. Drexler, 22 Cal.4th 1084, 1095 (2000). The lodestar is the number of hours reasonably expended multiplied by the reasonable

hourly rate. PCM Group, Inc., 22 Cal.4th at 1095. In determining the number of reasonable hours, California courts have found fees may be awarded even in the absence of detailed time sheets. Sommers v. Erb, 2 Cal.App.4th 1644, 1651 (1992). Once the lodestar is established, the court determines whether this figure should be augmented or diminished by one or more factors, including the novelty and complexity of the action, the skill displayed in presenting the case, the results obtained, the contingent nature of the award, the extent to which the litigation precluded counsel from accepting other employment, and the delay in receiving payment of the fees. Ketchup, 24 Cal.4th at 1132; PCM Group, Inc., 22 Cal.4th at 1096. As no other method of calculation was provided for in the Deeds of Trust, the court will utilize the lodestar method.

      The hourly rates for Redwood Trust's attorneys are reasonable. Attorney Don J. Pool seeks between $180.00 an hour to 225.00 an hour. Attorney Steve Stoker seeks between $180.00 to $200.00 an hour. Attorney Pool billed his legal assistants at $95.00 an hour. Plaintiffs do not argue or present any evidence that these rates are unreasonable. Based on the court's knowledge of relevant rates in this legal community, Redwood Trust's evidence, and Plaintiffs' non-opposition to these rates, the court finds Redwood Trust's claimed rates reasonable.

      The court has reviewed Exhibit E attached to the declaration of Attorney Pool. The court finds the noted services are reasonable. Plaintiffs do not object to the hours Redwood Trust claims were spent defending this action. In total, Redwood Trust's attorneys and legal assistants billed a total of $7,881.36. The court finds this amount reasonable and it will be awarded. No party seeks a modifier, and the court does not believe one is warranted in this case. Thus, the court grants Redwood Trust's motion and awards Redwood Trust $7,881.36 in attorneys fees from Plaintiff Environ-Save, Plaintiff Terry Hamilton, and Plaintiff Sharon Hamilton.

//

**B. Thurston**

*1. Attorney's Fees Provision in the Westamerica Deed of Trust*

The parties agree that Plaintiff Terry Hamilton and Plaintiff Sharon Hamilton owned real property located at 835 North Hart Road, Modesto, California. The parties agree that Westamerica Bank held a first deed of trust against the property for an amount of $100,000.00 ("Westamerica Deed of Trust"). The Westamerica Deed of Trust was assigned to Defendant Dolly Willms as trustee of the 1982 Trust, for the benefit of Thurston and Catherine Willms Locke. Plaintiffs' sixth claim alleges fraud regarding the North Hart Road Property and the Westamerica Deed of Trust. Plaintiffs allege Willms made misrepresentations to Hamilton that induced Plaintiffs to retire the $100,000 debt owned by Westamerica Bank. Plaintiffs allege that they did not know this deed of trust had been assigned to Dolly Willms as trustee of the 1982 Trust. The parties agree that the Westamerica Deed of Trust contained an attorney fee provision as follows:

> **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such as the court may adjudge reasonable as attorneys' fees at trial and or any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-Judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, appraisals fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Unlike the general attorney's fees language in Redwood Trust's deeds of trust, the language found in the Westamerica Deed of Trust is narrower. The Westamerica Deed of Trust allows for attorney's fees that are incurred by the lender, which in the lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights. The sixth

claim alleges that Willms induced Plaintiffs to pay off the Westamerica Deed of Trust without telling Plaintiffs this Deed had been assigned to Defendant 1982 Trust. After Plaintiffs paid off the Westamerica debt, Defendants foreclosed on the North Hart Road property based on an entirely different note and deed of trust, which Defendants also owned. The complaint seeks to set aside this foreclosure sale and return title to Plaintiffs. However, it does not appear this remedy, if even attainable, concerns the Westamerica Deed of Trust. Neither the 1982 Trust nor any other Defendant took any action on the Westamerica Deed of Trust. Based on this court's understanding of the sixth claim, no Defendant is being sued because of their ownership of the Westamerica Deed of Trust or any duties owed under this document. Thus, the court cannot find that the 1982 Trust, or any other Defendant, was required to litigate this action for the protection of its interest or the enforcement of its rights given under the Westamerica Deed of Trust. As such, attorney's fees are not available.

Even assuming the attorney's fees provision in the Westamerica Deed of Trust applies to the sixth claim, or some other claim, Thurston was not a party to the Westamerica Deed of Trust. The parties agree that Thurston did not sign the deed of trust. Thurston has not provided any authority for the proposition that as a beneficiary of the 1982 Trust she may be held personally responsible for or obtain the legal benefit of a contract made by the 1982 Trust. As the burden on this attorney's fees motion is on Thurston, the court finds that Thurston has failed to show how she may be legally bound to a contract that she did not sign.

In both the motion and the reply, Thurston argues that she is entitled to fees because Plaintiffs would have been entitled to fees had they won. Thurston's contention is based on California Civil Code § 1717(a) and Reynolds Metals Co. v. Alperson, 25 Cal.3d 124 (1979). California Civil Code § 1717(a) provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Relying on Reynolds Metals Co. v. Alperson, 25 Cal.3d 124 (1979) (Reynolds ) and other similar cases, Thurston contends that because Plaintiffs asked in the complaint that the property secured by Westamerica Deed of Trust be returned to Plaintiffs and Plaintiffs asked for attorney's fees, Thurston is entitled to fees under Section § 1717.   Reynolds is one of a number of cases holding that when a party prevails in an action brought under a contract, Section 1717 permits that party's recovery of fees if the opposing party would have been entitled to fees under the contract had that party prevailed. Reynolds, 25 Cal.3d at 128-29.  A party is entitled to attorney fees under Section 1717 even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed." Hsu v. Abbara,  9 Cal.4th 863, 870 (1995).

In Reynolds, a corporate defendant defaulted on two promissory notes containing attorney fees clauses.  The obligee on the notes sued individuals on the theory that the individuals were the alter egos of the corporation and thus were liable on the promissory notes.  The trial court rejected the alter ego theory and absolved the individual defendants from personal liability for the corporate obligations.  The California Supreme Court concluded that each individual defendant "sued on a contract as if he were a party to it" could recover attorney fees under Civil Code section 1717. Reynolds, 25 Cal.3d at 128.  In Hsu v. Abbara,  9 Cal.4th 863 (1995), the Hsus sued the Abbaras for breach of contract.  The Abbaras's defense was that there was no contract, and the court agreed that no contract was ever formed.  The document the Hsus' contended was a written contract had an attorney fee clause.  The California Supreme Court concluded that the Abbaras were entitled to attorney fees under Section 1717.  Hsu, 9 Cal.4th at 870-71.

However, if the defendant is not a party to the contract and would not have been liable for attorney's fees had the plaintiff prevailed, fees are not available under Section 1717.  In Super 7 Motel Associates v. Wang, 16 Cal.App.4th 541 (1993), a buyer of real property sued a seller and its broker for fraud, seeking rescission or fraud damages. Super 7, 16 Cal.App.4th at 544.  The buyer prevailed as to the seller but not as to the broker, and the broker sought attorneys' fees

11

pursuant to the purchase contract. Id.   The Court of Appeal concluded that the broker was not entitled to attorneys' fees because he was not a party to the contract and therefore, could have only been liable in tort had the plaintiff prevailed. Id. at 549.   On that basis, the Court of Appeal concluded that the action, as to the broker, was not an action "on the contract." Id. The court distinguished the broker from the seller on the basis that the remedy of rescission – which California courts have held is an action on the contract – could only have been obtained as to the seller. Id. Citing Reynolds, however, the Court of Appeal recognized that the broker would have been entitled to seek attorneys' fees, even though he was not a party to the contract, if the plaintiff had brought an action "on the contract" against the broker such that the plaintiff would have been entitled to fees if it had prevailed. Id. at 550.

     Redwood Trust's reliance on Reynolds and its progeny is misplaced.   The question before the court in this case is whether Thurston satisfied the first prerequisite for an award of fees under Section 1717, namely, an action on a contract containing a fee provision.   As discussed above, neither the sixth claim nor any other claim in this action is based on or arises out of the Westamerica Deed of Trust.   Unlike the Redwood Trust Deeds of Trust discussed above, Plaintiffs' request for a return of title does not implicate the Westamerica Deed of Trust because the Westamerica Deed of Trust was never foreclosed on.   Reynolds and its progeny do not eliminate the essential requirement for an action on a contract with a fee provision.   Thurston was not a party to Westamerica Deed of Trust and did not sign it. "Section 1717 was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions. [Citations.]"   Reynolds, 25 Cal.3d at 128. "Its purposes require Section 1717 to be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." Id.   Neither Reynolds nor its progeny stands for the proposition that an attorney fee clause applies when no

12

party would have been ordered to pay fees because the action is not based on the contract.

The court also notes that Plaintiffs have never contended that they are entitled to attorney fees under the attorney fee clause in the Westamerica Deed of Trust.  Thurston correctly points out that in the complaint Plaintiffs prayed for attorney fees against Defendants.  However, the complaint never explained Plaintiffs' theory of attorney's fees against Thurston.  To the extent Thurston is relying on Plaintiffs' mere prayer for attorney fees, Thurston's argument appears to be one of estoppel – i.e. because Plaintiffs requested attorney's fees against Thurston, they are estopped from urging that Section 1717 is not applicable.

The cases suggesting that Section 1717 liability for attorney fees rests upon an estoppel theory have been disapproved as inconsistent with the California Supreme Court's holdings in Hsu and Reynold.  See  M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One, 111 Cal.App.4th 456, 470 (2003) (" We agree with the many state court decisions refusing to apply estoppel against a losing party who sought attorney fees under circumstances where that party would not have been entitled to such fees had it prevailed").   There is not sufficient authority to find that Thurston is entitled to attorney's fees simply because Plaintiffs demanded them in their complaint without a showing that Plaintiffs actually could have obtained attorney's fees from Thurston had Plaintiffs won.  Regardless, even if a theory of estoppel could be used to justify an award of attorney fees under some circumstances, estoppel is not appropriate here where it does not appear Plaintiffs have ever contended that they are entitled to an award of attorney fees based on the attorney's fees provision found in the Westamerica Deed of Trust.  Thus, Thurston is not entitled to attorney's fees pursuant to a contract provision.

### *2. Bad Faith Prosecution*

Thurston also contends that she is entitled to attorney's fees because the litigation against her was in bad faith.  Thurston points out that the only allegation concerning her in the complaint is found in an introductory paragraph and alleges that she was the named beneficiary on the assignment of the Westamerica Deed of Trust.  Thurston argues that evidence now shows

that this statement is false, and the 1982 Trust received the assignment.  Thurston points out that Plaintiffs' Rule 26(a) disclosures never identified any information about Thurston or the Westamerica Deed of Trust.  Thurston also cites to Plaintiffs' responses to Defendants' interrogatory asking the basis of the Willms Enterprises' racketeering activities.  In his response, Hamilton stated that the Willms Enterprise consisted of numerous people, including Thurston, and they "transmitted false and fraudulent information in regards to the $150,0000.00 second Trust Deed of the Chemical Way Property, the $750,000.00 mortgage loan to the Weld County Property and the Hood Lane Property."  Thurston points out that no documents were ever produced to substantiate this response.  Thurston argues that Plaintiffs did not preface their discovery response with language such as "it is Plaintiffs' belief," but rather, Hamilton responded to the interrogatory stating Thurston had done this activity.  Finally, Thurston points to Plaintiffs' general delay in conducting discovery, by which Plaintiffs eventually ascertained Thurston's only involvement was as a beneficiary of the Trust Defendants.

      The court has discretion to award attorney fees under the court's general equitable powers.  Federal courts have inherent power to assess attorney fees against a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Alyeska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 258-59 (1975); Dubois v. United States Dept. of Agriculture, 270 F.3d 77, 80  (1st Cir. 2001); Espinoza-Gutierrez v. Smith, 94 F.3d 1270, 1279 (9th Cir. 1996).  Awarding attorney fees based on bad faith conduct is punitive in nature, and generally is  warranted only in exceptional cases and for dominating reasons of justice. Brown v. Sullivan, 916 F.2d 492, 495  (9th Cir. 1990). Bad faith includes a broad range of willful improper conduct, but mere recklessness, without more, does not justify sanctions under the court's inherent power. Fink v. Gomez, 239 F.3d 989, 991-94  (9th Cir. 2001). A finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." Primus Automotive Fin'l Services, Inc. v. Bartarse, 115 F.3d 644, 648  (9th Cir.

14

1997). "[A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." Fink, 239 F.3d at 994. A colorable claim for relief is no bar to this sanction because bad faith does not require that the legal and factual basis for the action be totally frivolous; "where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." Id. at 991-93. The burden of showing bad faith is on the party claiming bad faith. Dubois, 270 F.3d at 80; Espinoza-Gutierrez, 94 F.3d at 1279. Before awarding sanctions, the court must make an explicit finding that the conduct constituted or was tantamount to bad faith. Primus Automotive, 115 F.3d at 648.

The court cannot find bad faith in Plaintiffs' proceeding with an action against Thurston. When filing this action, Plaintiffs believed that Defendants, including Thurston, were part of a RICO conspiracy that had committed various acts of fraud, breach of contract, and theft. Until discovery, Plaintiffs did not know the roles of the various Defendants. Given Rule 8(a)'s liberal pleading standard and the nature of the complaint's allegations, the court does not find Plaintiffs' lack of specification about Thurston's role at the time the complaint was filed unreasonable. The court has previously expressed its disappointment with the rate at which Plaintiffs' conducted discovery. However, the delay in conducting discovery appears to have been based on Plaintiffs' retention of several different attorneys over the course of this action, and Plaintiffs' attorneys' other case load. This is not the same as bad faith. From this court's knowledge of the case, it appears that Plaintiffs were willing to dismiss Thurston once they obtained all relevant discovery, and when a stipulated dismissal could not be reached, did not oppose Thurston's motion for summary judgment.

The court simply cannot find that Plaintiffs knew or should have known that Thurston had no part in the lending transactions underlying this action. Given Defendants' use of several people and entities to purchase property and loan money, it was not completely unreasonable for

Plaintiffs to presume that Thurston, as family member and beneficiary of the Trusts, was somehow involved. When responding to interrogatories Hamilton could have done a better job of distinguishing between allegations based on his belief and events for which he had personal knowledge. However, interrogatories are generally prepared by attorneys and legal staff, and there has been no showing that Hamilton's failure to preface his statements as being only his belief misled Defendants regarding the actual evidence in Plaintiffs' possession. While Plaintiffs' delay in ascertaining an exact theory of liability against Thurston may have been careless, the court cannot find it was in bad faith. Thus, Thurston's motion for attorney's fees premised on the court's inherent power must be denied.

## ORDER

Accordingly, based on the above memorandum opinion, the court ORDERS that:

1. Redwood Trust's motion for attorney's fees is GRANTED;
2. Redwood Trust is AWARDED $7,881.36 in attorney's fees against Plaintiff Terry Hamilton, Plaintiff Sharon Hamilton, and Plaintiff Environ-Safe, Inc.; and
3. Thurston's motion for attorney's fees is DENIED.

IT IS SO ORDERED.

Dated:     **June 2, 2006**                    **/s/ Anthony W. Ishii**
9h0d30                                                        UNITED STATES DISTRICT JUDGE