IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERRY D. HAMILTON, et al., | ) | CV F 02-6583 AWI SMS |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER GRANTING |
| v. | ) | DEFENDANTS' MOTION TO |
| | ) | ENFORCE STIPULATION AND |
| HENRY W. WILLMS, et al., | ) | SANCTIONS |
| | ) | |
| Defendants. | ) | (Document #510, #521) |
| | ) | |

## BACKGROUND

This action was filed on July 17, 2002, in the United States District Court for the District of Colorado.   Pursuant to Defendants' motion, on December 11, 2002, the District Court of Colorado transferred the action to this court.   On June 11, 2003, Plaintiffs filed a second amended complaint.

On May 21, 2004, the court issued its Scheduling Conference Order.  This order set trial in this matter for December 5, 2005.

Following, the Scheduling Conference Order, Defendants filed numerous motions for summary judgment, most of which the court continued at Plaintiffs' request to allow Plaintiffs additional time to file oppositions.   During this time frame the time, the parties stipulated to extend the time in which discovery could be conducted and the time for filing dispositive motions.

After the court ruled on the various motions for summary judgment, four claims remained in this action: (1) The Second Claim for fraud and forbearance on foreclosure Agreements 2 & 3.[1]   (2) The Third Claim for breach of contract concerning foreclosures on California properties.[2] (3) The Fifth Claim for theft of Colorado Property in violation of Colorado law.[3]   (4)  The Sixth Claim for fraud in relation to California property in violation of California law.[4]

On November 21, 2005, the parties filed their joint Pretrial Statement.

On November 28, 2005, the court held a Pretrial Conference with the parties.   Because the final motion for summary judgment was still under submission with the court, because Defendants sought to file a motion for entry of final judgment as to certain Defendants and for other reasons, the court continued the hearing and ordered a status conference to be held on December 19, 2005.  The court then moved this conference to January 9, 2006, and then to February 6, 2006.

On March 8, 2006, the parties and the court entered a stipulation and set trial in this matter for November 28, 2006 and set the Pretrial Conference for October 11, 2006, which was

---

[1]  Agreement 2 alleges that Defendant Terry Wilms, acting on behalf of the 1986 Trust (Trust 1) allegedly promised to provide an accounting and delay the foreclosure of Property Group Three if Plaintiff Terry Hamilton would not file bankruptcy and pay $2000 for a forbearance of the sale.   Agreement 3 alleges that Plaintiff Terry Hamilton, individually and on behalf of Enviro-Safe, Inc. ("ESI"), and Defendant Henry Wilms orally agreed to the following: (1) ESI would not attempt to stop the trustee's sale of Property Group Four; (2) Defendants would provide a complete accounting of all sums paid on Loan Three and credits applied against Loan One; (3) Plaintiffs would obtain a third-party loan to repurchase Property Group Three and Property Group Four; and (4) Defendant would reconvey Property Group Three, Four, and Five to the Hamiltons and ESI upon payment of all sums due under Loan Three, based on a verified accounting.

[2]  This claim is based on Defendant Henry Wilms' failure to follow the terms of Agreement 2.

[3]  This claim is proceeding on a fraudulent concealment claim under Colorado law.  This claim is based on Defendants' foreclosure of property in Weld County, Colorado by making allegedly fraudulent statements about the amount owed on the loan.   Plaintiffs claim that Defendants did not properly give credit for $150,000 in payments made on the loan.

[4]  This claim concerns Wilms' alleged misrepresentations to Hamilton that induced Plaintiffs to retire a $100,000 debt owned by WAG that was senior to Defendants' liens on the North Hart Road Property.

2

continued to October 27, 2006.

Between March 8, 2006, and the October 27, 2006, the only motions filed concerned attorneys fees and the final  judgments that had been entered.   During this time, no motion concerning discovery was filed.

The court held its Pretrial Conference on October 27, 2006.   At the Pretrial Conference, the parties indicated that they would be ready for trial on November 28, 2006.  The court then issued its Pretrial Order on November 2, 2006.  The Pretrial Order stated that the trial in this action would be held on December 5, 2006 and the motions in limine hearing would be held on November 21, 2006, which was later reset to November 28, 2006.

The parties then filed extensive motions in limine.   The parties also filed exhibit and witness lists.   Between October 27, 2006 and November 28, 2006, no motion concerning discovery was filed.

On November 28, 2006, the court held a hearing on the motions in limine.   At the hearing Plaintiffs stated that they still needed to depose Suzzane Conry.   Plaintiffs claimed there was a stipulation to allow this deposition, but Defendants were claiming this stipulation had expired.   Because this issue concerned discovery, the court referred the parties to Magistrate Judge Sandra M. Snyder to see if she could reach an informal resolution before trial.

On November 29, 2006, six days before trial, Plaintiffs filed a motion to compel the deposition of Ms. Conry and to compel the enforcement of a previous stipulation.   Additional documents concerning this motion were filed on December 1, 200, December 2, 2006, and December 4, 2006.[5]

---

[5] Of issue concerning Suzzane Conry's deposition was the fact that Ms. Conry, and her company, had entered into a settlement stipulation with Defendants in another lawsuit.  One condition of this settlement was a non-disclosure clause.   Apparently, the parties and Ms. Conry engaged in several discussions to reach an agreement to allow Ms. Conry's testimony in this action. Attached to Plaintiffs' motions are the declarations of Ms. Conry and Terry Hamilton concerning an October 2005 oral agreement.  Ms. Conry states the agreement was that Defendants would excuse the non-disclosure clause for the purposes of this lawsuit, Plaintiffs would pay the expenses for Ms. Conry's deposition, and the deposition would occur in California.   Ms. Conry received a signed stipulation from Plaintiffs concerning her deposition on

1   On November 29, 2006, Magistrate Judge Sandra M. Snyder held an informal telephonic

2   conference concerning the issue of the stipulation and Ms. Conry's deposition.[6]   No informal

3   agreement was reached regarding this discovery issue.   Magistrate Judge Snyder held another

4   informal telephonic conference on December 4, 2006.   Again, an agreement was not reached.[7]

5   Magistrate Judge Snyder found that she could not issue a ruling on the discovery motion without

6   input from Judge Ishii because of her rulings' potential impact on the trial, which was set to start

7   the next day.   The partes were then referred to Judge Ishii to discuss whether the trial should be

8   continued.

9   On December 4, 2006, the court held the first recorded telephonic hearing with the

10   parties.   After allowing the parties to briefly state the discovery dispute, the court found that the

11   issue before it was whether to grant a continuance of the trial to allow time to resolve the

12   discovery matter.   The court's informal transcript reads as follows:

13   THE COURT: All right.   Well, let me just indicate, and again, you folks
have very precious little time to meet and confer, but the only reason that this is
14   still alive, the only reason I referred it to Magistrate Jude Snyder was some - - a
representation that there was a stipulation, et cetera, and since I was not privy to
15   that, I felt that it should go back to Magistrate Judge Snyder if there was
something there that was meritorious or that she felt would require some further
16   consideration by me, then I would certainly take that into consideration, but it was

17

18   October 7, 2005, but did not receive one from Defendants by October 10, 2005, as she believed
the oral argument required.   Defendants claim they were expecting Ms. Conry to sign the
19   stipulation and send it to them for their signature.   Regardless, a copy of the agreement that has
been provided to the court shows that it was signed by Defendants on October 10, 2005, by Mr.
20   Hamilton on October 10, 2005, and by Plaintiff's attorney and other Plaintiffs on October 7,
2005.   Defendants contend they signed the stipulation on October 10, 2005, and also claim that
21   Plaintiffs made changes to the stipulation and did not sign the final copy until October 10, 2005.
Defendants claim that they and their attorney were ready for Ms. Conry's October 10, 2005
22   deposition, but neither Ms. Conry nor Plaintiffs' attorney appeared.   Soon after, Ms. Conry
traveled to California, presuming all parties would soon sign a stipulation and she would be
23   notified of a new deposition date.   Defendants claim that the stipulation was for Ms. Conry's
deposition on October 10, 2005 only, and there never was a stipulation because Ms. Conry never
24   signed it.

25   [6] This conference was not recorded, as is the practice of the Magistrate Judges in the
Fresno Division of the Eastern District of California regarding informal discovery hearings.
26

27   [7] This conference was not recorded, as is the practice of the Magistrate Judges in the
Fresno Division of the Eastern District of California regarding informal discovery hearings.

28   4

certainly not a signal on my part that I was leaning in any way towards a continuance or necessarily reopening discovery.  It was a matter, if there was something that would require some reopening of discovery, then that's something that I would take into consideration if there were a request for a continuance.  But I think I mentioned during the hearing, you know, we're on the eve of trial.  We are now literally on the eve of trial, and I'm not casting any blame on anyone, but the fact of the matter is, it is an old case   We had originally set it for trial back a year ago.  It was reset for now, which is a year later.  There were numerous motions, including motions for summary judgment, and looking when we have over 500 entries in this particular docket.  And it's clear it's been litigated.  It's not like people sat on it for two years.  So the fact that now or November 1st or whenever, that this issue has arisen, as I mentioned I think at our hearing, discovery is closed.  And when we got together on pretrial conference, I both - - both attorneys indicated because this was off the record, that they were ready to go, they wanted to move this along, and just get it done, which is fair after all it is an old case.  There was no indication to me at all, any time up until just a few days ago that there was a problem.  In fact I didn't even learn until the hearing about these tapes, and I'm not even saying that the tapes are necessarily relevant. . . . I learned for the first time at the hearing that the originals existed and that the plaintiffs knew exactly where the tapes were, and if it was so significant you know, I'm just surprised that Mr. Hamilton would now claim prejudice when he's had 4 and a half years to figure out the tapes had any significance at all and to do what he's supposed to do which is do pretrial discovery.  If there were any issues that should be raised they should have been raised during discovery process not during hearing on motions in limine and certainly not the day before trial.  So you folks can meet and confer if you want.  If you think Mr. Pool, well, you know, if there is an appellate issue here, and I'd rather get it resolved, if you stipulate to continuance you need to let me know by 4:00 p.m.   There is simply no reason why discovery has not been completed . . . .

. . . if I grant a continuance here, there is just no rhyme or reason to setting trial dates.  There is no rhyme or reason to doing pretrial conferences and motions in limine.  All the things we do to assure the Court and both sides that we're ready to go . . . .   So I thought over all, both parties were comfortable at the hearing - - conclusion of the hearing on motions in limine that, okay, what you have is what you're going to trial on.  Other than that one question that I thought at least merited some consideration by Magistrate Judge Snyder.  We've done that.  And again, ***so I'm denying any request for a continuance***.   You folks will just need to plan accordingly.  ***Be here tomorrow morning 8:30 ready to try the case with what you have.  If somehow again, Mr. Pool, if you decide, well, you know, there's a risk here and maybe a continuance is in order, you folks need to let me know by 4:00*** . . . .

. . . .

     THE COURT:   All right, Okay.  ***Unless I hear from you folks by 4:00, otherwise we'll see you tomorrow morning at 8:30***.

(Informal Transcript) (emphasis added).

     A little before 4:00 p.m. on December 4, 2006, the parties contacted the court and stated they had reached a stipulation to continue the trial.   The court then held a second recorded

1   telephonic hearing.   The formal transcript reads as follows:

2   . . . .

3        MR. GILMORE:   Yes.  **Mr. Pool and I have negotiated a stipulation
    that would continue the trial.  In exchange for that, Mr. Hamilton is going to
4   stipulate to eliminate certain parties and certain claims from the trial.**
    . . . .

5        MR. POOL: And I can - - I can recite that agreement, essentially, in brief if
    the Court would like me to on the record.

6        THE COURT: Yes, because we do have a record, and I just want to make
    sure that both parties have an opportunity to place on the record the exact nature

7   of the stipulation.  So both of you feel free to add to whatever because that's why I
    do have my court reporter here.

8        MR. POOL:   Thank you.  Your Honor.  This is Don Pool speaking, and if
    Mr. Gilmore wants to clarify any points, we can do that after I recite the basic

9   terms.

         First is, the **plaintiff stipulates to judgment in favor of Victor McCluen
10  and Lend-Teck Financial. Inc.** on the remaining claims in the Second Amended
    complaint.

11       The plaintiffs also **stipulate to judgment in favor of Dolly Willms
    individually**.  The claims as to Dolly Willms as a trustee of either the 1982 or

12  1986 trust are not affected by this stipulation.

         Third, the **plaintiffs stipulate to judgment in favor of the remaining

13  defendants on the fifth and sixth claims for relief** in the Second Amended
    Complaint.

14       The **fourth part of the stipulate is that any motions for attorney's fees on
    the foregoing stipulations or entry of judgment shall be brought after the entry

15  of the final judgment in this case.**

         Fifth - -

16       MR. GILMORE:   This is Mr. Gilmore.  That is correct, and the purpose
    of this is to allow MR. Hamilton to file his motion regarding the stipulations and

17  agreements on Miss Conry's deposition.

         MR. POOL: And I was going to get to that next - -

18       MR.  GILMORE: I'm sorry.

         MR. POOL: There's two more parts that kind of explain it.  **The trial date

19  is stipulated to be vacated so that plaintiffs' motion to compel compliance with
    discovery stipulations can be set on regular notice by plaintiffs.**

20       **And then sixth, the trial date will be reset by the Court after ruling on
    plaintiffs' motion**, and both parties, of course, reserve the right to contest that

21  motion and by no means is an agreement that there is any merit to the motion, but
    I think what we're anticipating is depending on how the Court rules, there may be

22  an argument for additional discovery or additional experts, but those issues are all
    reserved until the Court's ruling on plaintiffs' motion.

23       MR.  GILMORE:   That's correct.  Your Honor.

         THE COURT:   All right, Okay, All right.  **Anything else, then, that

24  either side wishes to place on the record?**

         MR. GILMORE:   **No, Your Honor**.   I think like I said, the purpose of

25  this would be to bring the plaintiffs' concern about the agreement with Miss
    Conry and get that resolved.

26       THE COURT:   All right, Okay.  Why don't we do the following then:
    Go ahead and memorialize this.  It's on the record, but what I would like is a

27

28                                    6

signed stipulation with all the conditions, and I know Mr. Pool, you indicated that maybe it was a summary.  There might be a little bit more information as long as there's nothing that would affect the basic stipulation.   Go ahead and file that.  And once I get that, then I'll go ahead and probably meet and confer with you folks as far as setting up any kind of briefing schedule or hearings.

MR. POOL:  Very good, Your Honor.  Do we need to appear tomorrow morning at 8:30?

THE COURT:   No.  ***Based upon the oral stipulation, and I assume that both counsel are speaking and have binding authorization from your respective clients to enter into the stipulation?***

MR. GILMORE:   ***Your Honor, I do.  This is Mr. Gilmore.  Also Mr. Hamilton, he's on the speakerphone, so he's heard all of this, and he is nodding his head in agreement.***

THE COURT:   All right.

MR. POOL:   And yes, Your Honor, I do have the authorization from all of the remaining defendants.

THE COURT:   ***Very well.  In light of that, then, I'm going to order the trial date is vacated.  Neither - - no party, no counsel has to appear tomorrow morning.  And then - - and I will order that the stipulation be memorialized in written document signed by respective counsel and parties.***   When do you think you might be able to file that?

MR. POOL: I can provide a copy of the draft to Mr. Gilmore tomorrow morning, and I hope to have everyone's signatures, assuming that it's acceptable, and we can file that by the end of the day.

THE COURT:   Okay, well, just make sure because there may be some distances.  Go ahead and - - how about Wednesday, by Wednesday by 4:00 p.m.  Okay, and when I get it, Ill probably issue an order setting a briefing schedule or whatever, status conference date, and proceed from there.  I'll try to get that out shortly after I receive the stipulation.

Now, if for some reason you can't get in by 4:00 PM Wednesday, just let us know, and if there is no objection, I can give you more time if you want more time.

MR. POOL: Very good.

MR. GILMORE: Your Honor, I don't think that will be a problem, and I'll get it to Mr. Capozzi exactly the - - who is supposed to be the lead counsel on this case.  We'll get it to him.  Okay.

THE COURT:   Okay, that's fine.

MR. GILMORE:   Thank you.  Your Honor.

THE COURT: Okay, this will conclude this hearing, then.

MR. GILMORE:   Okay, thank you.

MR. POOL:   Thank You.

Certified Transcript (emphasis added).

No stipulation was ever filed with the court.

On December 11, 2007, Defendants filed a motion to enforce the stipulation and award

sanctions.   Defendants contend that the court has inherent power to enforce the settlement

agreement and stipulation.   Defendants also ask for monetary sanctions against Plaintiffs for the

7

costs of filing the motion to enforce the stipulation.

On January 8, 2007, Plaintiffs filed an opposition.   Plaintiffs' basic opposition is that (1)

Sharon Hamilton was not fully aware of the proceedings that might adversely affect her interest

in Plaintiffs' remaining claims and she did not have knowledge of the precise terms of the

proposed stipulation and it was entered into without her direct involvement; and (2) Terry

Hamilton did not have a complete understanding of the terms, conditions, or consequences of the

proposed stipulation at the time it was recited on the record.   Plaintiffs argue that the court's

requirement that the stipulation be memorialized indicated that the terms had not been agreed

upon at the time of the oral stipulation.   Finally, Anthony P. Capozzi, the lead counsel and trial

lawyer for all Plaintiffs, was unaware of the proceedings and had not discussed the matter with

the clients.

In support of their opposition, Plaintiffs filed the declarations of Mr. Hamilton and Mrs.

Hamilton.   Mr. Hamilton declares:

> 2.      I was not present at the discussion that took place regarding the
> stipulation that was discussed before Judge Ishii and others on December 4, 2006.
> I did not learn of all the alleged terms until I saw the draft stipulation circulated by
> Mr. Pool.  I did not understand all the ramifications of the stipulation and do not
> agree to them.
> 3.      When I nodded my head during the proceedings, I was at the point
> of acknowledging Mr. Gilmore's comments regarding the discovery dispute
> concerning Ms. Conry's deposition where in stated: Mr. Gilmore: "*I think like I
> said, the purpose of this would be to bring the plaintiffs' concern about the
> agreement with Ms. Conry and get that resolved.*"
> 4.      My understanding was that we were taking further actions to
> enforce at least four Stipulations . . . to finish discovery including taking Suzanne
> Conry's deposition. . . . .[Mr. Hamilton's position on discovery].
> 5.      I was not clear about the proposed terms of Mr. Pool's stipulation
> and I do not approve of giving up any of our claims.  I was confident that Mr.
> Pool's proposed stipulation going to at least be modified if acceptable at all,
> which it is not.  When Mr. Pool said: "*I can provide a <u>copy of the draft to Mr.
> Gilmore tomorrow morning, and I hope to have everyone's signature,
> ASSUMING THAT IT'S ACCEPTABLE,</u> and we can file that by the end of the
> day.*"
> .  .  .  .   After I received the draft of Mr. Pool's stipulation and had a change
> to reflect on the documents that we had just filed, I realized it would be a very
> damaging to my wife and I to accept Mr. Pool's document.   Mr Pool had refused
> to allow Magistrate Snyder to informally hear our motion to compel discovery and
> this matter involved much more serious consequences after I read his draft that I
> did not have time to even think about since everything happened so fast in the

8

proceeding.

. . . .[Additional arguments on discovery.]

Mrs. Hamilton's declaration states in pertinent part:

> 2.      I was not present at the discussion that took place regarding the stipulation that was discussed before Judge Ishii and others on December 4, 2006. I did not learn of all the alleged terms until I saw the draft stipulation circulated by Mr. Pool. I did not understand all the ramifications of the stipulation and do not agree to them.
> 3.      I did not talk to Mr. Gilmore or our lead counsel Mr. Capozzi about the stipulation.
> 4.      My understanding was that on December 4, 2006, we were taking further action to enforce at least four stipulations the were approved and ordered by the court to finish discovery including taking Suzanne Conry's deposition . . . .
> 5.      I was shocked about the proposed terms of Mr. Pool's stipulation and I do not approve of giving up any of my claims.
> . . . .

On January 10, 2007, the court entered an order stating it would hold an evidentiary hearing to ascertain the truth of the assertions the parties and attorneys have made on the record in this action.   The court ordered Terry Hamilton, Sharon Hamilton, David Gilmore, and Anthony Capozzi to be at the January 22, 2007 hearing.   At Plaintiff's request, the court later continued this hearing to February 5, 2007.

On January 11, 2007, Defendants filed a reply.   Along with their reply, Defendants ask the court take judicial notice of a sanctioning order issued by the United States Bankruptcy Court for Colorado and an order of contempt entered into by the Stanislaus County Superior Court.

On February 5, 2007, the court held a hearing.   At the hearing, Plaintiff Terry Hamilton, Plaintiff Sharon Hamilton, Attorney Anthony Capozzi, and Attorney David Gilmore answered the court's questions under oath.

On February 8, 2007, Plaintiffs filed a supplemental declaration.[8]  In this declaration, Plaintiff Terry Hamilton states that there is no event or record supporting Plaintiffs' attorneys' testimony that Plaintiff Terry Hamilton had authority to speak for Plaintiff Sharon Hamilton.

---

[8]  While this declaration has Plaintiffs' attorneys names and addresses on it, it is signed by only Plaintiff Terry Hamilton.   Both Mr. Capozzi and Mr. Gilmore filed clarifications that this declaration was filed by Terry Hamilton, and they did not prepare or sign the document.

**QUESTIONS TO BE RESOLVED**

Plaintiff Terry Hamilton and Plaintiff Sharon Hamilton claim that they did not understand on December 4, 2006 that they had agreed to give up certain claims and dismiss certain defendants in return for a continuance of the trial to resolve the Ms. Conry discovery matter.  The Hamiltons' position raises several questions the court must answer.  (1) Did Mr. Gilmore have his clients consent to enter into the stipulation to continue the trial, to allow for time for the court to hear the discovery issue concerning Ms. Conry,  in return for dismissing certain defendants and two causes of action?  (2) If Mr. Gilmore had his clients consent, did the parties reach on oral stipulation, which the court must enforce, or was there merely an agreement to reach an agreement in the future, which the court could not enforce?  (3) If the court finds Mr. Gilmore had consent from either Mr. Hamilton or Mrs. Hamilton, what sanction should be imposed on the Hamiltons for stating under penalty of perjury that they did not consent to the stipulation?  (4) If the court finds Mr. Gilmore did not have one or both of his client's consent, what sanction should be imposed on Mr. Gilmore for misrepresenting his clients' consent to the court?  (5) What remedy is appropriate?

**DISCUSSION**

To rule on the pending motion, the court must address three basic issues.  First, the court must determine what evidence it can consider.   Second, the court must determine if the stipulation can be enforced.   Third, the court must determine what sanctions should be imposed and against whom should sanctions be imposed.

**I.  EVIDENCE**

In resolving the current motion before the court, the court will consider several pieces of evidence.  The court will consider the transcripts of what occurred on December 4, 2006, the in court testimony of February 5, 2007, and the case file, including declarations and exhibits that have been filed regarding this motion.

**A.  Motion to Strike Portions of the Hamiltons' Declarations**

Defendants seek to strike portions of the Mr. Hamilton's Declaration and Mrs. Hamilton's Declaration.   During the hearing, the court questioned the Hamiltons, and they offered testimony similar to that found in their declarations.

Defendants move to strike the portions of Mr. Hamilton's Declaration and Mrs. Hamilton's Declaration, in which these Plaintiffs state their understanding of the December 4, 2006 oral agreement, as not relevant.  The court finds that it is not necessary to strike any portion of the Hamiltons' declarations or the Hamiltons' testimony in court.  The issue before the court is whether Mr. Gilmore had his clients' consent to enter into the oral stipulation of December 4, 2006.  Mr. Hamilton's Declaration and testimony and Mrs. Hamilton's Declaration and testimony on their "understanding" of the agreement will be given as much weight as the court feels is necessary to determine if Mr. Gilmore had his clients' consent.    Thus, Defendants' motion to strike is denied.

**B.  Request for Judicial Notice**

In ruling on the pending motion, Defendants request the court take judicial notice of findings by the Colorado Bankruptcy Court, the Colorado District Court, and the Stanislaus County Superior Court.

The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993).  Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989).  As such, the court can take judicial notice over the court records from other cases.

The problem with taking judicial notice of these court orders is that Defendants appear to be submitting them to show that Mr. Hamilton is lying regarding the December 4, 2006 oral stipulation because other courts have found Mr. Hamilton to be untruthful.   Rule 404(b) of the

11

Federal Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Where the evidence is proffered primarily to demonstrate motive and only incidentally to attack credibility, the evidence may properly be admitted under Rule 404(b).  Roshan v. Fard, 705 F.2d 102, 104 (4th Cir. 1983).  For example, in Roshan, the Fourth Circuit found the plaintiff's conviction of a crime for which the defendant acted as informant was admissible because it provided plaintiff's motive for the assault, indicating that plaintiff was really the aggressor in his lawsuit against the defendant for battery.  Id. at 104-06.

Here, it appears the only reason the other court orders have been provided to this court is to show that because Mr. Hamilton lied to other courts, he must also be lying to this court.   Such evidence is simply not admissible under Rule 404(b) and Rule 403.  Thus, the court denies Defendants' motion for judicial notice.

**C.  Privilege**

Neither Plaintiffs nor their attorneys have raised the issue of attorney-client privilege. However, because the court's inquiry did delve into areas that ordinarily would be privileged, the court briefly will explain why the attorney-client privilege was deemed waived for the purposes of resolving the pending motion.

Under California law, "the deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice." Transamerica Title Ins. Co. v. Sup.Ct. (Bank of the West), 188 Cal.App.3d 1047, 1053 (1987). In addition, under Federal common law, a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation.  See Bittaker v. Woodford, 331

12

F.3d 715, 718 (9th Cir. 2003) (discussing privilege in depth when finding habeas petitioner

waived attorney-client privilege by raising ineffective assistance of counsel claim).   "The

principle is often expressed in terms of preventing a party from using the privilege as both a

shield and a sword."  Bittaker, 331 F.3d at 719; Chevron Corp. v. Pennzoil Co., 974 F.2d 1156,

1162 (9th Cir. 1992).   Because the issue is whether Mr. Gilmore had his client's consent to enter

into the stipulation with Defendants and the court, the court finds any evidence about this issue is

not privileged.

**II.  ENFORCEMENT OF STIPULATION**

**A.  Legal Standards**

### *1.  Enforcement of Settlements*

If an action was originally filed in Federal Court under federal question jurisdiction, such

as this one, federal common law controls an attorney's actions concerning settlement.  See

Michaud v. Michaud, 932 F.2d 77, 79 (1st Cir. 1991) (applying federal law to determine extent of

attorney's authority to bind client to settlement); Fennell v. TLB Kent Co., 865 F.2d 498, 501 (2nd

Cir.1989) ("where an action is based upon federal law, the authority of an attorney to settle that

action is a federal question" and federal law is applied); Scott v. Burns Intern. Sec. Services, Inc.,

165 F.Supp.2d 1133, 1139 (D. Hawaii 2001) (apply federal common law to case brought under

federal question).

Under federal law, a court has the inherent power summarily to enforce a settlement

agreement with respect to an action pending before it, and the merits of the antecedent

controversy become inconsequential.   In re City Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th

Cir. 1994); Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987);  TNT Marketing, Inc. v. Agresti,

796 F.2d 276, 278 (9th Cir. 1986); Decanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir.1978).

That enforcement power includes the authority to award damages for failure to comply with the

agreement.   TNT, 796 F.2d at 278. ; TNT Marketing, Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir.

1986).   To be enforced, a settlement agreement must meet two requirements. First, it must be a

1   complete agreement.   Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir. 1994); Callie,

2   829 F.2d at 890.   Second, both parties must have either agreed to the terms of the settlement or

3   authorized their respective counsel to settle the dispute.   Harrop v. Western Airlines, Inc., 550

4   F.2d 1143, 1144-45 (9th Cir. 1977).

5         ***2.  Who Has Authority to Settle?***

6         A party's attorney may enter into a settlement agreement if he or she has the express

7   permission of his or her client.   Harrop, 550 F.2d at 1145.   Attorneys do not have inherent power

8   by virtue of their employment alone to compromise a client's claim.   Higbee v. Sentry Ins. Co.,

9   253 F.3d 994, 999  (7th  Cir. 2001)   However, under federal common law, there is a presumption

10  that an attorney has authority to settle a matter for a client.   Garabedian v. Allstates Engineering

11  Co., 811 F.2d 802, 803 (3rd Cir.1987).[9]   Because there is a presumption that an attorney who

12  enters into a settlement agreement has the authority to do so, to show the attorney had no consent

13  for settlement, a party must sustain a "heavy burden" to establish that the attorney acted without

14  authority.   In re Artha Management, Inc., 91 F.3d 326, 329 (2nd Cir.1996); Larson v. Heritage

15  Square Assocs., 952 F.2d 1533, 1537  (8th Cir. 1992); Edwards v. Born, Inc., 792 F.2d 387,

16  389-90 (3rd Cir.1986).   If the issue of authority  hinges upon a factual issue and credibility

17  determinations are involved, the court should conduct an evidentiary hearing  Garabedian, 811

18  F.2d at 803.   "Where the client cannot affirmatively demonstrate the lack of consent, the

19  settlement will be enforced by the courts."  Scott,  165 F.Supp.2d at 1139.

20        ***3.  Settlement's Terms***

21        "A settlement agreement is treated as any other contract for purposes of interpretation."

22  United Commercial Insurance Service, Inc. v. The Paymaster Corp., 962 F.2d 853, 856 (9th Cir.

23  1992) (citing Adams v. Johns-Manville Corp., 876 F.2d 702, 704 (9th Cir. 1989)); Jeff D. v.

24

25        [9]  Under California law, an attorney cannot dismiss a lawsuit with prejudice without her

26  client's consent or knowledge.  See Blanton v. Womancare, Inc., 38 Cal.3d 396, 404-05 (1985);
    Romadka v. Hoge, 232 Cal.App.3d 1231, 1235-36 (1991).  There appears to be no presumption

27  that an attorney has authority.

28                                         14

1   Andrus, 899 F.2d 753, 759 (9th Cir.1989).   To enforce a settlement agreement, the court must

2   find that the parties agreed to the settlement's express terms and it is a complete agreement. See

3   Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir.1994)  Callie v. Near, 829 F.2d 888

4   890-91 (9th Cir. 1987);  Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir.1977).

5   If the material facts concerning the existence or terms of the settlement agreement are in dispute,

6   the court must hold an evidentiary hearing.  Callie, 829 F.2d at 890.

7        Oral settlement agreements, like other oral contracts, are enforceable in principle.  See

8   Ryan v. Garcia, 27 Cal.App.4th 1006, 1009 (1994); Nicholson v. Barab, 233 Cal.App.3d 1671,

9   1681 (1991). That means that even if the oral agreement was to be reduced to writing, it is

10  enforceable if the intent that it be binding was manifested by the parties. See Banner

11  Entertainment, Inc., 62 Cal.App. 4th 348, 358 (1998); Columbia Pictures Corp. v. DeToth, 87

12  Cal.App.2d 620, 629 (1948).  Whether it was the parties' mutual intention that their oral

13  agreement to the terms contained in a proposed written agreement should be binding immediately

14  is to be determined from the surrounding facts and circumstances of a particular case and is a

15  question of fact for the trial court.   Schwartz v. Shapiro, 229 Cal.App.2d 238, 248 (1964).

16  However, an agreement to make an agreement, without more, is not a binding contract.  See

17  Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 315 (9th Cir. 1996); see also Autry v. Republic

18  Prods., 30 Cal.2d 144, 151-52 (1947).  Whether an agreement is a final agreement or merely an

19  agreement to make an agreement depends primarily upon the intention of the parties. Lund v.

20  Albrecht, 936 F.2d 459, 463 (9th Cir.1991); Beck v. American Health Group, Inc., 260 Cal.Rptr.

21  237, 241 (1989).   Where any of the terms are left for future determination or there is a manifest

22  intention that the formal agreement is not to be complete until reduced to a formal writing to be

23  executed, there is no binding contract until this is done  Rennick, 77 F.3d at 315 (quoting

24  Smissaert v. Chiodo, 163 Cal.App.2d 827, 830 (1958)).

25  ___*4.  Enforcement of Stipulation*___

26       It is boilerplate law that oral agreements and stipulations made in the presence of the

27

28                                              15

1   court are enforceable, especially when acted upon.   <u>See</u> 73 Am. Jur. 2d Stipulations § 2;  7

2   A.L.R.3d 1394; <u>see also</u> <u>Kohring v. Robertson</u>, 137 Idaho 94, 44 P.3d 1149 (2002).   This is

3   because agreements reached in open court are agreements not only between the parties, but also

4   between them and the court, which the latter is bound to enforce.  <u>See</u> 7 A.L.R.3d 1394.  Statutes

5   and court rules requiring stipulations to be in writing do not apply to stipulations made in open

6   court.  <u>See</u>  83 C.J.S. Stipulations § 23.   Oral stipulations are binding if the record affirmatively

7   demonstrates the stipulation terms were announced to the parties, and the parties understood the

8   effects of their agreement.  <u>Id</u>.

9   **B.  Did Mr. Gilmore Have Clients' Consent to Enter the Stipulation and Settlement?**

10          ***1.  Mr. Hamilton***

11          Based on the transcripts of the December 4, 2006 hearings, Mr. Gilmore's testimony, and

12   Mr. Hamilton's testimony, the court finds that Mr. Gilmore had Mr. Hamilton's consent to enter

13   into the stipulation and settlement orally recited on the record during the second December 4,

14   2006 hearing.   Mr. Hamilton was fully aware that the case was going to trial unless Defendants

15   and Plaintiffs reached a stipulation.  He was in the room during conversations with the court and

16   with the attorneys.   Mr. Gilmore testified he explained the stipulations' terms to Mr. Hamilton

17   and he seemed to understand them.   Mr. Gilmore's testimony is credible.   Mr. Hamilton was in

18   the room when Mr. Gilmore stated on the record the stipulation was for a continuance in return

19   for the dismissal of certain claims.  Mr. Hamilton also heard Mr. Pool list the six conditions,

20   including the dismissals.   Mr. Hamilton's testimony that he did not really understand what the

21   agreement was for and somehow thought it was only to resolve the issues regarding Ms. Conry

22   testimony is simply unconvincing testimony.   Mr. Hamilton is not an unsophisticated litigant

23   who only understands the basic tenants of this case.   To the contrary, Mr. Hamilton appears to

24   have a good understanding of this action.   Mr. Gilmore's interactions with the court have

25   revealed Mr. Gilmore to be an attorney who speaks clearly and not one who uses such

26   complicated "legalize" that no lay person could be expected to understand him.   Based on these

27

28                                                          16

facts, the court finds that Mr. Hamilton consented to the oral stipulation and gave Mr. Gilmore

authority to make the agreement on his behalf.   The court finds that not only did Mr. Hamilton

give his consent to Mr. Gilmore, knowing what he was consenting to, but Mr. Hamilton then

personally gave his consent to the court by nodding after listening to the stipulation's terms.

Accordingly, the court finds Mr. Hamilton is bound by the stipulation.

### *2.  Mrs. Hamilton*

Finding Mrs. Hamilton consented to the oral stipulation is more difficult.   Mrs. Hamilton

was not in Mr. Gilmore's office on December 4, 2006, and she did not listen to either of the

court's telephonic hearings.   The court has no reason to disbelieve Mrs. Hamilton's testimony

that no one ever told her on December 4, 2006 that the court would not continue the trial to allow

time to resolve the discovery issue.   The court also believe's Mrs. Hamilton's testimony that no

one told her on December 4, 2006  that the only way to get Defendants to stipulate to a

continuance would be dismiss certain claims and Defendants from this action.   Mr. Hamilton

appears to have spoken to Mrs. Hamilton at some time on Defendant 4, 2006, but the evidence

before the court indicates she was not given sufficient details to knowingly consent to the oral

stipulation.

However, the fact Mrs. Hamilton did not personally express her consent to Mr. Gilmore

does not end the inquiry.   Both Mr. Gilmore and Mr. Capozzi testified that in this action they

have always dealt with Mr. Hamilton, despite the presence of other plaintiffs, and Mr. Hamilton

makes all decisions regarding this action for Mrs. Hamilton and the other plaintiffs.   Thus, the

question becomes whether Mr. Hamilton was Mrs. Hamilton's agent for the purposes of making

legal decisions in the action, including settlement.

Under traditional common law agency law, a principle can give her agent authority by

either actual authority or apparent authority.   Plaster v. United States,  720 F.2d 340, 352 n.23 (4th

Cir. 1983); Restatement (Second) of Agency § 27 (1958).   Relying on the Restatement

Second of Agency, the Ninth Circuit has found that: "implied or apparent authority is sufficient

1   to establish such agency."   <u>May Dept. Stores Co. v. N.L.R.B.</u>,  707 F.2d 430, 433 (9th 1983).

2

3

> . . . . apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

4

5   RESTATEMENT (SECOND) OF AGENCY §§ 1, 26, 27 (1958).   A principal causes his agent to have

6   apparent authority by conduct which, reasonably interpreted, causes third persons to believe that

7   the principal consents to have this act done on her behalf by the agent.   <u>First Fidelity Bank, N.A.</u>

8   <u>v. Government of Antigua & Barbuda--Permanent Mission,</u>  877 F.2d 189, 193 (2nd Cir. 1989).

9   The creation of an agency relationship under an "apparent authority theory has long been settled

10   in the federal system,"  <u>American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.</u>, 456 U.S.

11   556, 567 (1982)

12         Similarly, under California law, a principal's consent need not be express to establish an

13   agent's ostensible authority.  <u>Tomerlin v. Canadian Indemnity Co.</u>, 61 Cal.2d 638, 644 (1964).

14   Apparent agency arises as a result of conduct of the principal which causes the third party

15   reasonably to believe that the agent possesses the authority.  <u>Republic of Nicaragua v. Standard</u>

16   <u>Fruit Co.</u>,  937 F.2d 469, 480 (9th 1991); <u>Tomerlin</u>, 61 Cal.2d at 643.  Ostensible authority is such

17   authority  as a principal intentionally or by want of ordinary care, that the principal causes or

18   allows a third person to believe the agent possesses. Cal. Civ.Code § 2317.  Such an agency may

19   be "implied from the facts of a particular case, and if a principal by his acts has led others to

20   believe that he has conferred authority upon an agent, he cannot be heard to assert, as against

21   third parties who have relied thereon in good faith, that he did not intend to confer such power . .

22   . ."  <u>Tomerlin</u>, 61 Cal.2d at 844. "Ostensible authority can be implied from the facts and

23   circumstances of the case."  <u>Shoals v. Home Depot, Inc.</u>,  422 F.Supp.2d 1183, 1189 (E.D.

24   Cal.2006); <u>Tomerlin</u>, 61 Cal.2d 683.

25         The court finds that under the facts of this case, Mrs. Hamilton had given Mr. Hamilton

26   her apparent authority and/or ostensible authority to make all legal decisions in this action.   The

27

28                                         18

1  evidence before this court reveals that Mr. Hamilton made the decisions in this action.  At the

2  hearing, Mr. Capozzi testified that from his perspective Mr. Hamilton made the decisions in this

3  action.   Given the way Plaintiffs have conducted this lawsuit and how they interacted with their

4  attorneys, Mrs. Hamilton and Mr. Hamilton have reasonably caused their attorneys to believe that

5  Mrs. Hamilton consents to have Mr. Hamilton make all decisions for her regarding this action.

6  By allowing Mr. Hamilton to make the decisions in this action to Plaintiffs' attorney, Plaintiffs'

7  attorneys have reasonably been caused to believe Mr. Hamilton is Mrs. Hamilton's agent.

8  Accordingly, Mr. Hamilton had authority as Mrs. Hamilton's agent to enter into the stipulation

9  on Mrs. Hamilton's behalf.

10       Mr. Hamilton had the authority to agree to the stipulation for Mrs. Hamilton.  This

11  findings is enough to hold Mrs. Hamilton to the stipulation's terms given the presumption that

12  Mr. Gilmore had her consent when he stated so on the record.   As discussed above, Mr.

13  Hamilton understood the stipulation and knowingly agreed to its terms.   Because Mr. Hamilton

14  was acting as Mrs. Hamilton's agent, Mrs. Hamilton is also deemed to have had knowledge of

15  the stipulation's terms.

16       Accordingly, the court finds that both Mr. Hamilton and Mrs. Hamilton agreed to the

17  December 4, 2006 oral stipulation and must be bound by it.

18  **B.   What is the Stipulation?**

19       Plaintiffs contend that the court cannot enforced the December 4, 2006 oral stipulation

20  because it was only an agreement to reach a stipulation in the future, and no future agreement

21  was ever reached.  This position is disingenuous. The court clearly informed the parties that the

22  court would not continue the case without a stipulation.   Because the court continued the case,

23  there must have been a stipulation.   Oral agreements and stipulations made in presence of the

24  court are enforceable because they are agreements not only between the parties, but also between

25  them and the court, especially in a case such as this one where the court acted upon the

26  stipulation. See 73 Am. Jur. 2d Stipulations § 2;  7 A.L.R.3d 1394.

27

28                                   19

1      Further, the language by which the court ordered the stipulation be placed in writing

2 clearly indicates the basic terms were already stipulated to.   Reading the court's statements, one

3 simply cannot find the court was continuing the trial to see if the parties could reach some kind

4 of agreement or stipulation.   Neither Mr. Hamilton nor Mrs. Hamilton found anything

5 objectionable in the proposed stipulation that was not covered by the oral agreement made with

6 the court.  The terms the Hamiltons find undesirable are the very terms they orally agreed to

7 during the December 4, 2006 hearing.

8      Accordingly, the court will enforce the terms that the court and parties agreed to at the

9 December 6, 2006 hearing.  The court finds these terms to be:

10      (1)    Judgment in favor of Victor McCluen and Lend-Teck Financial Inc. on the

11           remaining claims in the Second Amended complaint.

12      (2)    Judgment in favor of Dolly Willms individually, but the claims as to Dolly

13           Willms as a trustee of either the 1982 or 1986 trust remain.

14      (3)    Judgment in favor of the remaining defendants on the fifth and sixth

15           claims for relief in the Second Amended Complaint.

16      (4)    Any motions for attorney's fees on the foregoing stipulations or entry of

17           judgment shall be brought after the entry of the final judgment.

18      (5)    The trial date is vacated so that plaintiffs' motion to compel compliance

19           with discovery stipulations can be set on regular notice by plaintiffs - all

20           parties reserve the right to contest the motion and there is no stipulation as

21           to the merit of the motion.

22      (6)    The trial date will be reset by the Court after ruling on plaintiffs' motion.

23 The court will enforce the above stipulation and settlement.

24 **D.  Fundamental Fairness Exception**

25      Both in their briefs and at the hearing both Mr. Hamilton and Mrs. Hamilton expressed

26 their belief that the stipulation is fundamentally unfair to them, particularly in light of the fact

27

28                           20

they believe Defendants have violated their oral argument about Mrs. Conry's deposition.   At the hearing, Mrs. Hamilton expressed Plaintiffs' perceived unfairness by pointing out that they are having to give up significant claims and Mr. Willms is not having to give up anything. Given the overwhelming effect Plaintiffs' perceived unfairness has had on this entire process, the court will attempt to explain why enforcing the agreement does not violate some fundamental notion of good faith and justice.

Contrary to Plaintiffs' belief, the stipulation at issue was not just an agreement between the parties.   It was also an agreement with the court.   On December 4, 2006, the court had cleared several weeks of its schedule to hold the trial in this action.   The court and its staff spent days preparing for trial.   A prospective jury pool was called.   Other trials and matters were continued on the court's calendar so that the court would be free to conduct this trial.   The court refused to continue the trial to allow time to resolve the Ms. Conry deposition dispute because Plaintiffs had been on notice there was a problem with her deposition since November 2005. After denying the motion to continue, this action was going to proceed to trial the next day without the court resolving the pending motions regarding Ms. Conry.   The only way the court was willing to continue the trial, to allow Plaintiffs to further address a discovery issue that had arisen in November 2005, was if Defendants agreed to it.   This did put Defendants in a better bargaining position because Defendants were ready for trial and did not have additional late discovery they wished to conduct.   However, if the only way Defendants were willing to stipulate to a continuance was to require the dismissal of parties and claims, Plaintiffs had the right to reject this stipulation as too harsh.   Plaintiffs did not.

Plaintiffs do not seem to realize what party to the stipulation "got the worst deal."   In return for the stipulation, Defendants did obtain the dismissal of some claims and Defendants; but Defendants now have to address the Ms. Conry discovery issue and delay any finality to this action.   In return for the stipulation, Plaintiffs will have the discovery issue concerning "their most important witness" resolved and obtain additional time to prepare for trial.   Clearly,

1   Plaintiffs are hurt by the stipulation because they have to give up claims.   But, Plaintiffs had the

2   ability to avoid dismissal of claims.   And, the court must point out that Plaintiffs are certainly

3   not the party most harmed by enforcing the stipulation.    It is not clear what benefit the court

4   received by entering into the stipulation.   The court was clearly burdened by having several

5   weeks during which it could have conducted other trials, which it had continued to be free for

6   this action, that the court will have to hear at a later date.   The court focused its limited court

7   resources to prepare for this trial and the court will have to duplicate much of this work in the

8   future.   The court's staff were burdened by having to prepare for trial, obtain a jury pool, and

9   then inform potential jurors after hours that their service was not needed after all.   The

10   stipulation has resulted in even more work for the court because the court has spent considerable

11   time resolving the pending motion and will mostly likely spend considerable time resolving the

12   discovery dispute.   What benefit the court received from the stipulation remains unclear.   When

13   the trial actually happens, the trial will arguably be shorter because of there are fewer claims.

14   However, the court does not see how this benefit outweighs the significant burden the stipulation

15   has caused this court.  Thus, the court does not find that any equitable fairness arguments as to

16   Plaintiffs require the court to not enforce the stipulation.

17   **III.  SANCTIONS**

18   **A.  Legal Standards**

19          An attorney or party who "so multiplies the proceedings in any case unreasonably and

20   vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

21   attorneys' fees reasonably incurred because of such conduct."   28 U.S.C. § 1927.  Sanctions

22   under section 1927 require the court to find recklessness or bad faith.  Cline v. Industrial

23   Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1236 (9th Cir. 1999);  Pacific

24   Harbor Capital, Inc. v. Carnival Air Lines, Inc.,  210 F.3d 1112, 1118 (9th Cir. 2000); In re

25   Keegan Management Co., Securities Litig., 78 F.3d 431, 436 (9th Cir.1996).   The Ninth Circuit

26   assesses "an attorney's bad faith under a subjective standard.  Knowing or reckless conduct

27

28                                                          22

1   meets this standard." MGIC Indem. Corp. v. Moore, 952 F.2d 1120, 1121-22 (9th Cir.1991).

2   "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or

3   argues a meritorious claim for the purpose of harassing an opponent." Cline, 200 F.3d at 1236;

4   Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir.1986).   Bad faith can be found based on,

5   among other factors, the number and length of the pleadings, the timing involved in many of the

6   filings, and the substance of the claims asserted. Salstrom v. Citicorp Credit Services, Inc., 74

7   F.3d 183, 185 (9th Cir. 1995). Fees under section 1927 have been reversed where district court's

8   comments were consistent with negligence. MGIC Indem., 952 F.2d at 1121-22. A finding of

9   frivolous by itself is insufficient to support an award under section 1927. Estate of Blas v.

10  Winkler, 792 F.2d 858, 861 (9th Cir.1986).

11          The court also has discretion to award attorney fees under the court's general equitable

12  powers.   Federal courts have inherent power to assess attorney fees against a party who has acted

13  "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501

14  U.S. 32, 45-46 (1991); Alyeska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 258-59

15  (1975); Dubois v. United States Dept. of Agriculture, 270 F.3d 77, 80 (1st Cir. 2001);

16  Espinoza-Gutierrez v. Smith, 94 F.3d 1270, 1279 (9th Cir. 1996).   Awarding attorney fees based

17  on bad faith conduct is punitive in nature, and generally is warranted only in exceptional cases

18  and for dominating reasons of justice. Brown v. Sullivan, 916 F.2d 492, 495 (9th Cir. 1990).

19  Bad faith includes a broad range of willful improper conduct, but mere recklessness, without

20  more, does not justify sanctions under the court's inherent power. Fink v. Gomez, 239 F.3d 989,

21  991-94 (9th Cir. 2001). A finding of bad faith is warranted where an attorney "knowingly or

22  recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing

23  an opponent." Primus Automotive Fin'l Services, Inc. v. Bartarse, 115 F.3d 644, 648 (9th Cir.

24  1997). "[A]n attorney's reckless misstatements of law and fact, when coupled with an improper

25  purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain

26  tactical advantage in another case, are sanctionable under a court's inherent power." Fink, 239

27

28                                                  23

F.3d at 994.  A colorable claim for relief is no bar to this sanction because bad faith does not require that the legal and factual basis for the action be totally frivolous; "where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees."  Id. at 991-93.  The burden of showing bad faith is on the party claiming bad faith.  Dubois, 270 F.3d at 80; Espinoza-Gutierrez, 94 F.3d at 1279.  Before awarding sanctions, the court must make an explicit finding that the conduct constituted or was tantamount to bad faith.  Primus Automotive, 115 F.3d at 648.

**B.  Sanctions on Mr. Hamilton and Mrs. Hamilton**

The court has concluded that Mr. Hamilton is Mrs. Hamilton's agent in this action and was acting as such then stipulating to the December 4, 2006 oral agreement.   The court has concluded that Mr. Hamilton consented and agreed to this oral agreement.   In making this finding, the court has no choice but to find that Mr. Hamilton has misled the court in both his declaration and testimony that he did not understand the stipulation's terms and did not consent to these terms.   Agreements made in open court on which the court relies have no meaning if the court allows parties to escape them through mis-truths.  As such, a sanction is appropriate. While the court does not find that Mrs. Hamilton lied to the court, her agent mislead the court. Mr. Hamilton's and Mrs. Hamilton's actions were done in bad faith for the purpose of both maintaining all four claims ***and*** obtaining the benefit of having time to depose Ms. Conry prior to trial.   Such misconduct and lies clearly meet the bad faith standard for sanctions.

As a sanction, the court orders Mr. Hamilton and Mrs. Hamilton to pay Mr. Pool $3,712.50 for the costs of bringing this motion.

As discussed above, Mr. Hamilton's misrepresentations have created an additional burden on the court.   As such, the court orders Mr. Hamilton to pay the court $500 as a monetary sanction for the court's waste of judicial resources on unnecessary matters.

**C.  Sanctions for Mr. Gilmore and Mr. Capozzi**

The court finds that Mr. Gilmore had his clients' consent when he represented to the court

24

1   that he had his clients' consent.   As such, no sanction against Mr. Gilmore is warranted.

2       The court finds that Mr. Capozzi has not misled this court regarding his knowledge of the

3   events underlying the December 4, 2006 oral agreement nor misled the court about Mr.

4   Gilmore's authority in this action.   Thus, the court finds sanctions against Mr. Capozzi are not

5   warranted.

6                                          **ORDER**

7       Accordingly, the court ORDERS that:

8       1.      Defendants' motion to enforce the December 4, 2006 oral stipulation and

9               award sanctions is GRANTED.

10      2.      Pursuant to the December 4, 2006 oral stipulation, the court orders that:

11              a.      Judgment is GRANTED in favor of Victor McCluen and Lend-

12                      Teck Financial Inc. on the remaining claims in the second amended

13                      complaint;

14              b.      Judgment is GRANTED in favor of Dolly Willms individually on

15                      the remaining claims in the second amended complaint, but she

16                      remains a Plaintiff as a trustee of the 1982 or 1986 trusts;

17              c.      Judgment in favor of the remaining Defendants on the fifth and

18                      sixth claims for relief in the second amended complaint is

19                      GRANTED;

20              d.      Any motion for attorney's fees on the foregoing stipulations or

21                      entries of judgment shall be brought after the entry of the final

22                      judgment;

23              e.      The trial date is VACATED so that Plaintiffs' motion to compel

24                      compliance with discovery stipulations can be set on regular

25                      noticed calendar by Plaintiffs;

26              f.      The trial date will be reset by the court after ruling on Plaintiffs'

27

28                                          25

1    motion.

2    3.    Mr. Hamilton and Mrs. Hamilton SHALL IMMEDIATELY pay Mr. Don

3          Pool, Defendants' attorney, $3,712.50 for the costs of bringing this

4          motion.

5    4.    Mr. Hamilton SHALL IMMEDIATELY pay the court $500 as a monetary

6          sanction for the court's waste of judicial resources on unnecessary matters.

7    5.    Plaintiff shall file any motion concerning the deposition of Ms. Conry

8          within twenty days of this order's date of service.   Such motion SHALL

9          be noticed on the regular civil calendar of Magistrate Judge Sandra M.

10         Snyder pursuant to the Local Rules.

11   6.    Within ten days of any ruling on the discovery matter by Magistrate Judge

12         Sandra M. Snyder, the parties SHALL meet and confer and file a proposed

13         scheduling order setting forth further dates and deadlines in this action,

14         including a new trial date.

15

16   IT IS SO ORDERED.

17   **Dated:   March 2, 2007**                              **/s/ Anthony W. Ishii**
     0m8i78                                        UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28                                        26