IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **TERRY D. HAMILTON, et al.,** | ) | **1: 02 - CV - 6583 AWI SMS** |
| | ) | |
| **Plaintiffs**, | ) | **ORDER DENYING PLAINTIFFS'** |
| | ) | **MOTIONS FOR RECONSIDERATION** |
| **v.** | ) | **AND DENYING DEFENDANTS'** |
| | ) | **MOTION TO STRIKE** |
| **HENRY W. WILLMS, et al.,** | ) | |
| | ) | **(Documents #582, #583, #598, #680)** |
| **Defendants.** | ) | |
| | ) | |

## BACKGROUND

This action is proceeding on Plaintiffs' second amended complaint, filed on June 11, 2003. After the court ruled on the various motions for summary judgment, four claims remained in this action: (1) The Second Claim for fraud and forbearance on foreclosure Agreements 2 & 3. (2) The Third Claim for breach of contract concerning foreclosures on California properties. (3) The Fifth Claim for theft of Colorado Property in violation of Colorado law. (4) The Sixth Claim for fraud in relation to California property in violation of California law.

The court held its Pretrial Conference on October 27, 2006. At the Pretrial Conference, the parties indicated that they would be ready for trial on November 28, 2006. The court then issued its Pretrial Order on November 2, 2006. The Pretrial Order moved the trial in this action to December 5, 2006. Motions in limine were heard on November 28, 2006. At the motions in limine hearing Plaintiffs stated that they still needed to depose Suzzane Conry. Plaintiffs

claimed that there was a stipulation to allow this deposition, but Defendants were claiming this stipulation had expired.   Because this issue concerned discovery, the court referred the parties to Magistrate Judge Sandra M. Snyder to see if she could reach an informal resolution regarding Ms. Conry's deposition before trial.

On November 29, 2006, six days before trial, Plaintiffs filed a motion to compel the deposition of Ms. Conry and to compel the enforcement of a previous stipulation concerning Ms. Conry's deposition.   Additional documents concerning this motion were filed on December 1, 2006, December 2, 2006, and December 4, 2006.

On November 29, 2006, Magistrate Judge Sandra M. Snyder held an informal telephonic conference concerning the issue of the stipulation and Ms. Conry's deposition.[1]   No informal agreement was reached regarding this discovery issue.   Magistrate Judge Snyder held another informal telephonic conference on December 4, 2006.   Again, an agreement was not reached.[2] Magistrate Judge Snyder found that she could not issue a ruling on the discovery motion without input from the undersigned because of her rulings' potential impact on the trial, which was set to start the next day.   The partes were then referred to the undersigned to discuss whether the trial should be continued.

On December 4, 2006, the court held the first recorded telephonic hearing with the parties.   After allowing the parties to briefly state the discovery dispute, the court found that the issue before it was whether to grant a continuance of the trial to allow time to resolve the discovery matter.   The court found that discovery was closed.   The court noted that Plaintiffs had only brought to the court's attention that there was a problem with Ms. Conry's testimony a few days earlier.   The court found that if there were any outstanding discovery issues they should have been raised during discovery and not during the hearing on motions in limine and certainly

---

[1] This conference was not recorded, as is the practice of the Magistrate Judges in the Fresno Division of the Eastern District of California regarding informal discovery hearings.

[2] This conference was not recorded, as is the practice of the Magistrate Judges in the Fresno Division of the Eastern District of California regarding informal discovery hearings.

not the day before trial.    The court denied any request for a continuance.  The court then ruled:

"Be here tomorrow morning 8:30 ready to try the case with what you have.  If somehow again,

Mr. Pool, if you decide, well, you know, there's a risk here and maybe a continuance is in order,

you folks need to let me know by 4:00."   The court concluded the conference by saying "Unless

I hear from you folks by 4:00, otherwise we'll see you tomorrow morning at 8:30."

A little before 4:00 p.m. on December 4, 2006, the parties contacted the court and stated

they had reached a stipulation to continue the trial.   The court then held a second recorded

telephonic hearing.   The formal transcript reads in pertinent part as follows:

. . . .

MR. GILMORE:   Yes.  ***Mr. Pool and I have negotiated a stipulation that would continue the trial.  In exchange for that, Mr. Hamilton is going to stipulate to eliminate certain parties and certain claims from the trial.***
. . . .

MR. POOL: And I can - - I can recite that agreement, essentially, in brief if the Court would like me to on the record.

THE COURT: Yes, because we do have a record, and I just want to make sure that both parties have an opportunity to place on the record the exact nature of the stipulation.  So both of you feel free to add to whatever because that's why I do have my court reporter here.

MR.  POOL:   Thank you.  Your Honor.  This is Don Pool speaking, and if Mr. Gilmore wants to clarify any points, we can do that after I recite the basic terms.

First is, the ***plaintiff stipulates to judgment in favor of Victor McCluen and Lend-Teck Financial. Inc.*** on the remaining claims in the Second Amended complaint.

The plaintiffs also ***stipulate to judgment in favor of Dolly Willms individually***.  The claims as to Dolly Willms as a trustee of either the 1982 or 1986 trust are not affected by this stipulation.

Third, the ***plaintiffs stipulate to judgment in favor of the remaining defendants on the fifth and sixth claims for relief*** in the Second Amended Complaint.

The ***fourth part of the stipulate is that any motions for attorney's fees on the foregoing stipulations or entry of judgment shall be brought after the entry of the final judgment in this case.***

Fifth - -

MR. GILMORE:   This is Mr. Gilmore.  That is correct, and the purpose of this is to allow MR. Hamilton to file his motion regarding the stipulations and agreements on Miss Conry's deposition.

MR. POOL: And I was going to get to that next - -

MR.  GILMORE: I'm sorry.

MR. POOL: There's two more parts that kind of explain it.  ***The trial date is stipulated to be vacated so that plaintiffs' motion to compel compliance with discovery stipulations can be set on regular notice by plaintiffs.***

1    ***And then sixth, the trial date will be reset by the Court after ruling on
     plaintiffs' motion***, and both parties, of course, reserve the right to contest that
2    motion and by no means is an agreement that there is any merit to the motion, but
     I think what we're anticipating is depending on how the Court rules, there may be
3    an argument for additional discovery or additional experts, but those issues are all
     reserved until the Court's ruling on plaintiffs' motion.
4          MR. GILMORE:    That's correct. Your Honor.
           THE COURT:    All right, Okay, All right.  ***Anything else, then, that***
5    ***either side wishes to place on the record?***
           MR. GILMORE:   ***No, Your Honor.***   I think like I said, the purpose of
6    this would be to bring the plaintiffs' concern about the agreement with Miss
     Conry and get that resolved.
7          THE COURT:    All right, Okay.  Why don't we do the following then:
     Go ahead and memorialize this.  It's on the record, but what I would like is a
8    signed stipulation with all the conditions, and I know Mr. Pool, you indicated that
     maybe it was a summary.  There might be a little bit more information as long as
9    there's nothing that would affect the basic stipulation.   Go ahead and file that.
     And then once I get that, then I'll go ahead and probably meet and confer with you
10   folks as far as setting up any kind of briefing schedule or hearings.
           MR. POOL:   Very good, Your Honor.  Do we need to appear tomorrow
11   morning at 8:30?
           THE COURT:    No.  ***Based upon the oral stipulation, and I assume that***
12   ***both counsel are speaking and have binding authorization from your respective***
     ***clients to enter into the stipulation?***
13         MR. GILMORE:   ***Your Honor, I do.   This is Mr. Gilmore.  Also Mr.***
     ***Hamilton, he's on the speakerphone, so he's heard all of this, and he is***
14   ***nodding his head in agreement.***
           THE COURT:   All right.
15         MR.  POOL:   And yes, Your Honor, I do have the authorization from all
     of the remaining defendants.
16         THE COURT:   ***Very well.  In light of that, then, I'm going to order the***
     ***trial date is vacated.   Neither - - no party, no counsel has to appear tomorrow***
17   ***morning.  And then - - and I will order that the stipulation be memorialized in***
     ***written document signed by respective counsel and parties.***  When do you think
18   you might be able to file that?
           MR.  POOL: I can provide a copy of the draft to Mr. Gilmore tomorrow
19   morning, and I hope to have everyone's signatures, assuming that it's acceptable,
     and we can file that by the end of the day.
20         THE COURT:   Okay, well, just make sure because there may be some
     distances.  Go ahead and - - how about Wednesday, by Wednesday by 4:00 p.m.
21   Okay, and when I get it, Ill probably issue an order setting a briefing schedule or
     whatever, status conference date, and proceed from there.  I'll try to get that out
22   shortly after I receive the stipulation.
           Now, if for some reason you can't get in by 4:00 PM Wednesday, just let
23   us know, and if there is no objection, I can give you more time if you want more
     time.
24         MR. POOL: Very good.
           MR. GILMORE: Your Honor, I don't think that will be a problem, and I'll
25   get it to Mr. Capozzi exactly the - - who is supposed to be the lead counsel on this
     case.  We'll get it to him.  Okay.
26         THE COURT:   Okay, that's fine.
           MR. GILMORE:   Thank you.  Your Honor.
27

28                                        4

THE COURT: Okay, this will conclude this hearing, then.

MR. GILMORE:  Okay, thank you.

MR. POOL:   Thank You.

Certified Transcript (emphasis added).

No stipulation was ever filed with the court.  On December 11, 2006, Defendants filed a motion to enforce the stipulation and an award of sanctions for the costs of filing the motion to enforce the stipulation.   On January 8, 2007, Plaintiffs filed an opposition.   Plaintiffs contended that they did not have a complete understanding of the terms, conditions, or consequences of the proposed stipulation at the time it was recited on the record and Plaintiff Sharon Hamilton did not consent to the stipulation.   Plaintiffs also contended that the court's requirement that the stipulation be memorialized indicated that the terms had not been agreed upon at the time of the oral stipulation.   On January 10, 2007, the court entered an order stating it would hold an evidentiary hearing to ascertain the truth of the assertions the parties and attorneys had made on the record.   On February 5, 2007, the court held a hearing.   At the hearing, Plaintiff Terry Hamilton, Plaintiff Sharon Hamilton, Attorney Anthony Capozzi, and Attorney David Gilmore answered the court's questions under oath.   On February 8, 2007, Plaintiffs filed a supplemental declaration.[3]  In this declaration, Plaintiff Terry Hamilton stated that there is no event or record supporting Plaintiffs' attorneys' testimony that Plaintiff Terry Hamilton had authority to speak for Plaintiff Sharon Hamilton.

On March 6, 2007, the court granted Defendants' motion to enforce the December 4, 2006 oral stipulation and to award sanctions.   Relying on the parties' briefs, declarations, and testimony, the court found that Mr. Gilmore had Plaintiff Terry Hamilton's consent to enter into the stipulation orally recited on the record during the second December 4, 2006 hearing because he listened to the hearing over the speaker phone and nodded his agreement to the stipulation.   While the court found that Plaintiff Sharon Hamilton had not given her express agreement to the

---

[3]  While this declaration has Plaintiffs' attorneys names and addresses on it, it is signed by only Plaintiff Terry Hamilton.   Both Mr. Capozzi and Mr. Gilmore filed clarifications that this declaration was filed by Terry Hamilton, and they did not prepare or sign the document.

December 4, 2006 oral stipulation, she had given Plaintiff Terry Hamilton her apparent authority and/or ostensible authority to make legal decisions in this action.   Given the presumption under federal law that an attorney has his clients' consent when he states so on the record, the court found Plaintiff Sharon Hamilton consented to the stipulation through Plaintiff Terry Hamilton's agreement.   The court then ordered that pursuant to the December 4, 2006 oral stipulation: (a) Judgment was granted in favor of Victor McCluen and Lend-Teck Financial Inc.; (b) Judgment was granted in favor of Dolly Willms individually; (c) Judgment was granted in favor of the remaining Defendants on the fifth and sixth claims for relief; (d) Any motion for attorney's fees on the foregoing stipulations or entries of judgment would be brought after the entry of the final judgment; (e) The trial date was vacated so that Plaintiffs' motion to compel compliance with discovery stipulations could be set on regular noticed calendar by Plaintiffs; and (f) The trial date would be reset by the court after ruling on Plaintiffs' motion.   The court ordered Plaintiff Terry Hamilton and Plaintiff Sharon Hamilton to immediately pay Attorney Don Pool $3,712.50 for the costs of bringing the motion to enforce the stipulation and ordered Plaintiff Terry Hamilton to pay the court $500 as a monetary sanction for the court's waste of judicial resources on unnecessary matters.   The court then directed the parties to file any motion concerning the deposition of Ms. Conry within twenty days and directed the parties to file a proposed scheduling order setting forth further dates and deadlines, including a new trial date, within ten days of any ruling on the discovery matter.

After receiving several extensions of time to file motions for reconsideration, on April 6, 2007, Plaintiffs' Attorney, Anthony P. Capozzi,  filed a motion for reconsideration on behalf of all Plaintiffs.[4]   Plaintiffs contend that up until the December 4, 2006 stipulation there had never

---

[4] Attorney Capozzi's motion was inconsistent on whether it was brought on behalf of only Plaintiff Terry Hamilton or on behalf of all Plaintiffs.   In the interests of justice, the court previously found the motion was brought on behalf of all Plaintiffs.   However, the Entity Plaintiffs have been dismissed from this action, and only Plaintiff Terry Hamilton and Plaintiff Sharon Hamilton remain as Plaintiffs in this action.   Accordingly, the motions for reconsideration will be addressed as to Plaintiff Terry Hamilton and Plaintiff Sharon Hamilton only.

been a need or occasion where Plaintiffs' authority was needed to settle this action.   Plaintiffs provided evidence that there is no letter or other express written consent allowing Plaintiffs' attorneys to settle claims on their behalf.   Plaintiffs contend that the court incorrectly applied federal law to determine whether Plaintiffs had consented to the stipulation.   Because the underlying claims are brought under California and Colorado law, the law of California and Colorado should apply to determine consent.   Under both California and Colorado law, a settlement is not valid without the client's express consent.

On April 6, 2007, Attorney David Brown filed a motion for reconsideration on behalf of Plaintiff Sharon Hamilton.   Plaintiff Sharon Hamilton contends that the court should consider the new declarations of Attorney Capozzi and Attorney Gilmore because they had no opportunity to cross examine their attorneys at the court's February 5, 2007 hearing.   Plaintiff Sharon Hamilton also contends that the enforceability of settlement agreements should be governed by California and Colorado law, and under either law, a client's express consent to a settlement is necessary.   Plaintiff Sharon Hamilton argues that the court should not have relied on Attorney Capozzi's and Attorney Gilmore's opinion that Plaintiff Terry Hamilton made the decisions in this case for Plaintiff Sharon Hamilton because there had never been another instance where Plaintiff Terry Hamilton had made such a substantive decision that affected Plaintiff Sharon Hamilton's rights.   Finally, Plaintiff Sharon Hamilton contends that the sanctions awarded against her are unwarranted because she was not present when the terms of the stipulation were recited.

Along with the motions for reconsideration, Attorney Capozzi and Attorney Gilmore filed declarations clarifying their testimony.   The declarations state that they are not aware of any agreement as to the scope of Plaintiff Terry Hamilton's authority to speak on behalf of Plaintiff Sharon Hamilton.   The declarations state that there had never been a need or occasion where Plaintiffs authority was required for settlement or decisions involving material matters in this action.   The declarations state that a review of files reveals that there had been no event

7

1   requiring settlement authority and the one letter in the attorneys' file regarding settlement was an

2   express letter written to former counsel that was executed by both Plaintiff Terry Hamilton and

3   Plaintiff Sharon Hamilton.

4        On May 7, 2007, Defendants filed an opposition to Plaintiffs' motions for

5   reconsideration.   Defendants contend that the court should not consider any new facts because

6   the court asked Attorney Capozzi and Attorney Gilmore at the hearing whether there was

7   anything they wanted to add.   Defendants also contend that the court did not commit clear error

8   in relying on federal common law as the standard for consent to settlement.

9        After receiving several extensions of time, on May 31, 2007, Attorney Brown filed a

10  reply brief on behalf of Plaintiff Sharon Hamilton.   Plaintiff Sharon Hamilton provides

11  documents in which her signature was required or requested on proposed settlement, stipulated

12  dismissals settling claims, and discovery agreements.

13       On June 4, 2007, Defendants moved to strike the new evidence provided in Plaintiff

14  Sharon Hamilton's reply.   Defendants contend that such evidence may not be provided for the

15  first time in a reply brief.

16       On June 11, 2007, Plaintiff Terry Hamilton filed an untimely reply.[5]   Plaintiff Terry

17  Hamilton contends the court committed clear error on December 4, 2006 by not following the

18  court's Local Rules and the Federal Rules of Civil Procedure when conducting a settlement

19  conference.   Plaintiff Terry Hamilton contends the court erred by calling Plaintiffs' attorneys to

20  testify adversely to Plaintiffs and erred by not allowing Plaintiffs to cross examine their

21  attorneys.   Plaintiff Terry Hamilton also contends that all other documents concerning settlement

22  in this case required Plaintiff Sharon Hamilton's signature.   Plaintiff Terry Hamilton contends

23  the court erred and abused its discretion on December 4, 2006 by not ordering the parties to

24  appear for trial the next day to either conduct the trial or sign the stipulation.   If the court would

25

26

27       [5] Defendants moved to strike this reply as untimely.  In the interests of justice, the court
     denied Defendants' motion and stated that the court would consider the late reply.

28                                      8

1  have ordered Plaintiffs to appear for trial, Plaintiff Terry Hamilton contends they would have

2  gone to trial once they read the finalized stipulation.   Finally, Plaintiff Terry Hamilton contends

3  the court erred by holding a one sided inquiry about the December 4, 2006 oral hearing and not

4  having an evidentiary hearing where Plaintiffs could ask questions.

5  **LEGAL STANDARD**

6      The court has discretion to reconsider and vacate a prior order.  <u>Barber v. Hawaii</u>, 42 F.3d

7  1185, 1198 (9th Cir.1994); <u>United States v. Nutri-cology, Inc.</u>, 982 F.2d 394, 396 (9th Cir.1992).

8  Motions for reconsideration are disfavored, however, and are not the place for parties to make

9  new arguments not raised in their original briefs.   <u>Northwest Acceptance Corp. v. Lynnwood</u>

10  <u>Equip., Inc.</u>, 841 F.2d 918, 925-26 (9th Cir.1988).   Nor is reconsideration to be used to ask the

11  court to rethink what it has already thought.   <u>United States v. Rezzonico</u>, 32 F.Supp.2d 1112,

12  1116 (D.Ariz.1998).  "A party seeking reconsideration must show more than a disagreement with

13  the Court's decision, and recapitulation of the cases and arguments considered by the court before

14  rendering its original decision fails to carry the moving party's burden."  <u>U.S. v. Westlands</u>

15  <u>Water Dist.</u>, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001).  Motions to reconsider are committed

16  to the discretion of the trial court.  <u>Combs v. Nick Garin Trucking</u>, 825 F.2d 437, 441 (D.C.Cir.

17  1987); <u>Rodgers v. Watt</u>, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).  To succeed, a party must

18  set forth facts or law of a strongly convincing nature to induce the court to reverse its prior

19  decision. <u>See</u>, <u>e.g.</u>, <u>Kern-Tulare Water Dist. v. City of Bakersfield</u>, 634 F.Supp. 656, 665

20  (E.D.Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).

21  When filing a motion for reconsideration,  Local Rule 78-230(k) requires a party to show the

22  "new or different facts or circumstances claimed to exist which did not exist or were not shown

23  upon such prior motion, or what other grounds exist for the motion."

24  **DISCUSSION**

25  **A.  Court's Ability to Require Evidence from Plaintiffs' Attorneys**

26      Preliminarily, the court notes that Plaintiff Terry Hamilton has questioned this court's

27

28                                  9

1   ability to have called Attorney Capozzi and Attorney Gilmore at the February 5, 2007 hearing to

2   determine if Plaintiffs had agreed to the December 4, 2006 oral stipulation, as Attorney Gilmore

3   had stated on the record.   Under California law, "the deliberate injection of the advice of counsel

4   into a case waives the attorney-client privilege as to communications and documents relating to

5   the advice."  Transamerica Title Ins. Co. v. Sup.Ct. (Bank of the West), 188 Cal.App.3d 1047,

6   1053 (1987).   Under Federal common law, a litigant waives the attorney-client privilege by

7   putting the lawyer's performance at issue during the course of litigation.  See Bittaker v.

8   Woodford, 331 F.3d 715, 718 (9th Cir. 2003).   This principle is often expressed in terms of

9   preventing a party from using the attorney-client privilege as both a shield and a sword.  Bittaker,

10  331 F.3d at 719; Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992).

11          In opposing Defendants' motion to enforce the oral stipulation, Plaintiffs essentially took

12  the position that Attorney Gilmore misled the court when he said, on the record, that his clients

13  agreed to the stipulation.   By raising the issue of whether Attorney Gilmore had his client's

14  consent to enter into the stipulation with Defendants and the court, Plaintiffs waived any

15  privilege they might have had to prevent the court from calling Plaintiffs' attorneys as witnesses

16  regarding issues pertaining to the stipulation.

17  **B.  What Legal Authority Should Be Applied**

18          In the court's order enforcing the oral stipulation, the court found that if an action was

19  originally filed in Federal Court under federal question jurisdiction, such as this one, federal

20  common law controls an attorney's actions concerning stipulations and settlement.   This finding

21  is supported by numerous cases.  See, e.g., Michaud v. Michaud, 932 F.2d 77, 80 n.3 (1st Cir.

22  1991) ("like several other circuits, we here apply federal law to the issue of an attorney's

23  authority to settle a civil action brought under federal law."); Fennell v. TLB Kent Co., 865 F.2d

24  498, 501 (2nd Cir. 1989) ("where an action is based upon federal law, the authority of an attorney

25  to settle that action is a federal question."); Edwards v. Born, Inc., 792 F.2d 387, 389 (3rd

26  Cir.1986) (state law provides the rule on the question of an attorney's authority to settle his

27

28                                                      10

1   client's action when action is not derived from federal law); <u>Mid-South Towing Co. v. Har-Win,</u>

2   <u>Inc.</u>, 733 F.2d 386, 389 (5th Cir. 1984) ("Questions regarding the enforce ability or validity of

3   such agreements are determined by federal law-at least where the substantive rights and liabilities

4   of the parties derive from federal law.");  <u>Mid-South Towing Co. v. Har-Win, Inc.</u>, 733 F.2d 386,

5   389 (5th Cir. 1984) (attorney's authority to settle a matter of federal law in a maritime suit);

6   <u>Glazer v. J.C. Bradford & Co.</u>, 616 F.2d 167, 169 (5th Cir. 1980) (state law defines attorney's

7   authority in a diversity case); <u>Scott v. Burns Intern. Sec. Services, Inc.</u>, 165 F.Supp.2d 1133,

8   1139 (D. Hawaii 2001) (apply federal common law to case brought under federal question);

9   FEDERAL TRIAL HANDBOOK CIVIL § 3:2. Checklist: Matters governed by federal law (2007).

10          In the motions for reconsideration, Plaintiffs cite two cases to refute the court's holding

11  that federal common law should be applied.   Neither case meets the standard for a motion for

12  reconsideration because both were decided prior to the court's ruling.   Regardless, they do not

13  provide grounds to reconsider the court's legal finding.   The first case, <u>Thompson v. Continental</u>

14  <u>Emsco Co.</u>,  629 F.Supp. 1160 (S.D.Tex.,1986), actually supports the court's holding.   In

15  <u>Thompson</u>, the court found that: "Questions regarding the enforce ability or validity of

16  [settlement] agreements are determined by federal law-at least where the substantive rights and

17  liabilities derive from federal law." <u>Id</u>. 1163.   Because this court has jurisdiction over this action

18  based on federal question and supplemental jurisdiction, rather than diversity jurisdiction,

19  <u>Thompson</u> supports a finding that federal law applies.

20          The court does recognize that <u>Harrop v. Western Airlines, Inc.</u>,  550 F.2d 1143 (9th Cir.

21  1977), was a federal question case because the plaintiffs sued under the Civil Rights Act.    After

22  numerous continuances, the attorneys for the parties informed the court that the case had been

23  settled and that the only remaining task was to draft settlement papers.   In determining whether

24  an oral settlement is enforceable the Ninth Circuit stated:

25          A settlement agreement may be binding, in some circumstances, even if it is an
            oral one. Nevertheless, at least under California law, which is arguably applicable
26          here, an attorney has no authority, either actual or implied, to settle an action
            without the express permission of his client.

27

28                                                  11

1  | Id. 1145.   The court finds that <u>Harrop</u> does not compel this court to reconsider its prior order

2  | finding federal common law, rather than California law, applies.   The issue of what law to apply

3  | was not at issue in <u>Harrop</u>, and the Ninth Circuit simply assumed in dicta that California law

4  | would apply.   As such, the court does not find that <u>Harrop</u> compels the court to reconsider its

5  | finding that federal law controls whether the court should enforce the stipulation.

6  | **C. Enforcement of the Stipulation**

7  | In their motions for reconsideration, Plaintiffs attempt to categorize that happened on

8  | December 4, 2006 as a settlement conference.   Plaintiffs claim that Attorney Gilmore did not

9  | have their authority at the December 4, 2006 telephonic conference to settle this case.   Plaintiffs

10 | point out that none of the procedures for settlement conferences set forth in Local Rule 16-270,

11 | such as a settlement conference statement and participation of the principles, were followed

12 | during the December 4, 2006 hearing.   Plaintiffs are absolutely correct.   Neither of the

13 | December 4, 2006 telephonic conference calls were settlement conferences.   The court did not

14 | follow the procedures for such conferences and in no way attempted to settle this case.   To the

15 | contrary, the only issue before the court during the December 4, 2006 telephonic conferences was

16 | whether the court should continue the case to allow a discovery dispute to be resolved.   The

17 | court denied any continuance unless the parties reached a ***stipulation*** to continue the trial.

18 | During the second December 4, 2006 telephonic conference, the parties agreed on the record that

19 | they had ***stipulated*** to continue the trial based on several conditions, including the dismissal of

20 | some claims and defendants.   The court took no part in orchestrating this stipulation, and the

21 | court's participation was anything other than effectuating a settlement.   Thus, any failure of the

22 | court to follow the Federal Rules of Civil Procedure or the Local Rules concerning a settlement

23 | conference are irrelevant; No settlement conference occurred.   The court has never upheld any

24 | oral settlement agreement after a settlement conference.   The court is merely enforcing an oral

25 | stipulation between the parties and the court.

26 | It is boilerplate law that oral agreements and stipulations made in the presence of the

27 |

28 | 12

1  court are enforceable, especially when acted upon.  <u>See</u> 73 Am. Jur. 2d Stipulations § 2;  7

2  A.L.R.3d 1394; <u>see also</u> <u>Kohring v. Robertson</u>, 137 Idaho 94, 44 P.3d 1149 (2002).   This is

3  because agreements reached in open court are agreements not only between the parties, but also

4  between them and the court, which the latter is bound to enforce.  <u>See</u> 7 A.L.R.3d 1394.  Statutes

5  and court rules requiring stipulations to be in writing do not apply to stipulations made in open

6  court.  <u>See</u>  83 C.J.S. Stipulations § 23.   Oral stipulations are binding if the record affirmatively

7  demonstrates the stipulation terms were announced to the parties, and the parties understood the

8  effects of their agreement.  <u>Id</u>.

9          Nothing in the motions for reconsideration convinces the court that Plaintiff Terry

10  Hamilton did not understand the stipulation he entered into.  He heard the stipulation on the

11  record, and the court disbelieves Plaintiff Terry Hamilton's declaration and testimony that he did

12  not understand what he heard.   No additional discussion on this issue is necessary.

13          The court has always recognized that holding Plaintiff Sharon Hamilton to the December

14  4, 2006 oral stipulation is a close question because she apparently was never told the details of

15  the stipulation until after the second telephonic hearing on December 4, 2006.   The court

16  previously found that Plaintiff Sharon Hamilton gave her consent to the stipulation because her

17  implied agent, Plaintiff Terry Hamilton, gave his consent.    At the February 5, 2007 hearing,

18  both Attorney Gilmore and Attorney Capozzi testified that in this action they have always dealt

19  with Plaintiff Terry Hamilton, despite the presence of other plaintiffs, and Plaintiff Terry

20  Hamilton makes all decisions regarding this action for Plaintiff Sharon Hamilton and the other

21  plaintiffs.  Based on this testimony, the court concluded that Plaintiff Terry Hamilton had

22  Plaintiff Sharon Hamilton's implied consent to act as her agent.

23  **D.  New Evidence in the Motion for Reconsideration**

24          In the motions for reconsideration, both Attorney Gilmore and Attorney Capozzi have

25  filed declarations stating that, after reviewing the transcript of the February 5, 2007 hearing and

26  considering the history of the case, they realize that there was no event or occasion that required

27

28                                                      13

1  any settlement authority from Plaintiffs until the December 4, 2006 oral stipulation.  The

2  attorneys state that they should have testified that they are not aware of any agreement, either

3  formal or informal, as to the scope of Plaintiff Terry Hamilton's authority to speak on behalf of

4  Plaintiff Sharon Hamilton.

5      The court does not abuse its discretion by declining to consider new arguments raised for

6  the first time in a motion for reconsideration.  Rosenfeld v. United States Dep't of Justice, 57

7  F.3d 803, 811 (9th Cir.1995).   In addition, a party that fails to introduce facts in a motion or

8  opposition cannot introduce them later in a  motion for reconsideration unless they were

9  previously unavailable.  Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001); Shalit

10 v. Coppe, 182 F.3d 1124, 1132 (9th Cir. 1999).   Here, Plaintiffs offer the declarations of

11 Attorney Capozzi, Attorney Gilmore, and their own declarations to show that Plaintiff Sharon

12 Hamilton did not give her consent to anyone to make legal decisions on her behalf.   Plaintiffs

13 claim that the court must consider this evidence because the court did not give Plaintiffs the

14 opportunity to submit evidence at the February 5, 2007 hearing.

15      In response to this argument, the court must point out that the February 5, 2007 hearing

16 was called by the court *after* the parties had submitted their briefs and evidence supporting their

17 positions.   The court called the hearing because the court found that inconsistent information

18 was before the court.    At that time, Plaintiffs had already fully briefed their position on the

19 enforcement of the December 4, 2006 oral stipulation.    As part of their opposition, Plaintiffs

20 could and did present evidence showing Plaintiffs did not consent to the oral stipulation.    As

21 part of their opposition, Plaintiffs never asked for a hearing or to question witnesses.    At the

22 February 5, 2007 hearing, neither Plaintiffs nor their attorneys asked for the opportunity to

23 present additional evidence concerning whether Plaintiffs had consented to the December 4, 2006

24 oral stipulation.[6]   Prior to the court's ruling, Plaintiffs provided still additional evidence to the

25 _____

26      [6] Plaintiff Terry Hamilton did ask for the opportunity to question witnesses about
   stipulations made pertaining to discovery and the issue of Ms. Conry's deposition.   As the sole
27 issue before the court was whether Attorney Gilmore was correct when he told the court on

28                                              14

1    court.  This additional evidence still did not contain any clarifications from the attorneys

2    regarding their testimony nor documentary evidence concerning Plaintiff Sharon Hamilton's

3    involvement in this case.

4           Only *after* Plaintiffs received the court's order enforcing the oral stipulation did Plaintiffs

5    offer evidence attacking the court's reasoning.   "Court opinions are not intended as mere first

6    drafts, subject to revision and reconsideration at a litigant's pleasure."   Wallace v. Georgia

7    Department of Transp., 2006 WL 1582409, *2 (M.D.Ga. 2006); American Ass'n of People With

8    Disabilities v. Hood, 278 F.Supp.2d 1337, 1340 (M.D.Fla. 2003); Quaker Alloy Casting Co. v.

9    Gulfco Indus., Inc., 123 F.R.D. 282, 288 (N.D.Ill.1988).   There is an all too prevalent

10   misconception of the litigation process, in which the knocked-out combatant seeks to portray

11   what has taken place as a mere warmup rather than as the main event.   American Ass'n of People

12   With Disabilities v. Hood,  278 F.Supp.2d 1337, 1340 (M.D.Fla. 2003);  Huffman v. Anderson,

13   118 F.R.D. 97, 99 (N.D.Ind. 1987); Settino v. City of Chicago, 642 F.Supp. 755, 759 (N.D.Ill.

14   1986).   Plaintiffs' motion for reconsideration is simply not the place to offer evidence that could

15   have been provided earlier.   Regardless, the declarations provided with Plaintiffs' motions for

16   reconsideration do not change the court's findings that Plaintiff Terry Hamilton had Plaintiff

17   Sharon Hamilton's *apparent* authority to agree to the stipulation.

18          The court does not find the clarification of Attorney Capozzi's and Attorney Gilmore's

19   testimony requires reconsideration.   As discussed in the order enforcing the December 4, 2006

20   oral stipulation, implied or apparent authority is sufficient to establish agency.   May Dept. Stores

21   Co. v. N.L.R.B.,  707 F.2d 430, 433 (9th 1983); Restatement (Second) of Agency §§ 1, 26, 27

22   (1958).   A principal causes his agent to have apparent authority by conduct which, reasonably

23   interpreted, causes third persons to believe that the principal consents to have this act done on her

24   behalf by the agent.   First Fidelity Bank, N.A. v. Government of Antigua & Barbuda--Permanent

25

26   ─────────────

27   December 4, 2006 that he had his clients' consent to the December 4, 2006 oral stipulation, the
     court did not allow testimony or evidence concerning discovery issues.

28                                                    15

1  Mission,  877 F.2d 189, 193 (2nd Cir. 1989).     The creation of an agency relationship under an

2  "apparent authority theory has long been settled in the federal system," American Soc'y of

3  Mechanical Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 567 (1982). Similarly, under

4  California law, a principal's consent need not be express to establish an agent's ostensible

5  authority.  Tomerlin v. Canadian Indemnity Co., 61 Cal.2d 638, 644 (1964).

6       Here, Plaintiff Sharon Hamilton's conduct in this action reasonably caused Attorney

7  Capozzi and Attorney Gilmore to believe that Plaintiff Terry Hamilton could make decisions for

8  her in this action.   The fact Attorney Capozzi and Attorney Gilmore admit that Plaintiff Sharon

9  Hamilton never expressly gave Plaintiff Terry Hamilton such authority in writing is not

10 dispositive.   Plaintiff Terry Hamilton's agency may be implied from the facts of this case.

11 Attorney Gilmore, acting in good faith on Plaintiff Terry Hamilton's representation that the

12 stipulation was agreeable, represented to the court that he had his clients' authority to agree to the

13 December 4, 2006 oral stipulation.  During the December 4, 2006  hearing, Plaintiff Terry

14 Hamilton indicated his agreement with the stipulation and never raised the issue that his wife had

15 not been contacted and had no knowledge of the stipulation.    Thus, not only did Plaintiff Terry

16 Hamilton appear to have his wife's implied consent to Attorney Gilmore, he appeared to have his

17 wife's implied consent to the court.   As such, the court continues to find Plaintiff Sharon

18 Hamilton consented to the December 4, 2006 oral stipulation through her implied agent, Plaintiff

19 Terry Hamilton.   Taken with the federal common law principle that there is a presumption that

20 an attorney has authority to speak for his clients, the court continues to find that Plaintiff Sharon

21 Hamilton has not met the heavy burden to show that Attorney Gilmore did not have her consent

22 to enter into the stipulation because Attorney Gilmore incorrectly believed Plaintiff Terry

23 Hamilton could act as Plaintiff Sharon Hamilton's agent in this action.  See  In re Artha

24 Management, Inc., 91 F.3d 326, 329 (2nd Cir.1996); Larson v. Heritage Square Assocs., 952 F.2d

25 1533, 1537  (8th Cir. 1992) Garabedian v. Allstates Engineering Co., 811 F.2d 802, 803 (3rd

26 Cir.1987).

27

28                                        16

**E. New Evidence In Reply Brief**

Finally, the court notes that Plaintiffs have submitted even more evidence along with their reply briefs.   In the reply briefs, Plaintiffs provide a flurry of papers indicating that Plaintiff Sharon Hamilton has signed many documents, including stipulations, in this action on her own behalf.

The court cannot grant a motion on a new argument or new evidence presented for the first time in a reply brief.   See, e.g., Serpa v. SBC Telecommunications, Inc., 2004 WL 2002444, *5 n.4 (N.D.Cal. 2004); United States v. Chavez, 2002 WL 31971945, *3 (D.Or. 2002); In re Lal, 2002 WL 449661 *3 (N.D.Cal. Mar 15, 2002); Arakaki v. Cayetano, 299 F.Supp.2d 1107, 1110 n.3 (D. Hw. 2002);  United States v. Boyce, 148 F.Supp.2d 1069, 1085 (S.D. Cal. 2001); see also Smith v. Marsh, 194 F.3d 1045, 1052(9th Cir.1999) ("on appeal, arguments not raised by a party in its opening brief are deemed waived."); Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1176 & n. 4 (9th Cir.1995) (issues not raised in opening brief may not properly be raised in reply); Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1990) ("It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.").   The court declines to consider the new evidence offered in the reply briefs. While there is little excuse for providing evidence for the first time in a motion for reconsideration, there is absolutely no excuse for providing evidence for the first time in a reply brief to a motion for reconsideration.   Parties are required to raise all of their arguments in their opening brief to prevent "sandbagging" of other non-moving party and to provide opposing counsel the chance to respond.   Corson and Gruman Co. v. N.L.R.B.,  899 F.2d 47, 50 (D.C. Cir. 1990).   There simply must be an end to this process.   Plaintiffs cannot continue to make new arguments and provide additional evidence to attack the December 4, 2006 oral stipulation indefinitely.   Whether the court should enforce the stipulation has been briefed extensively for over six months.   The court finds that Plaintiffs' motion for reconsideration is the end of this issue.   No further motions or evidence will be considered.

17

**ORDER**

Accordingly, the court ORDERS that:

    1.    Plaintiffs' motions for reconsideration are DENIED.

    2.    Defendants' motion to strike is DENIED and the declaration has been afforded such weight as the court deems appropriate.

    3.    Pursuant to the court's March 6, 2007 order:

        A.    Plaintiffs SHALL IMMEDIATELY pay Attorney Don Pool, Defendants' attorney, $3,712.50; and

        B.    Plaintiff Terry Hamilton SHALL IMMEDIATELY pay the court $500 as a monetary sanction.

    4.    Pursuant to the court's April 4, 2007 order:

        A.    Plaintiffs SHALL file any discovery motion concerning Ms. Conry's deposition within twenty days of the date of service of this order;

        B.    The discovery motion concerning Ms. Conry's deposition SHALL be noticed on the regular civil calendar of Magistrate Judge Sandra M. Snyder pursuant to the Local Rules; and

        C.    Within ten days of any ruling on the discovery motion by Magistrate Judge Sandra M. Snyder, the parties SHALL meet and confer and file a proposed scheduling order setting forth further dates and deadlines in this action, including a new trial date.

IT IS SO ORDERED.

**Dated:   August 30, 2007**            **/s/ Anthony W. Ishii**
                                   UNITED STATES DISTRICT JUDGE